**UNITED STATES of America, Appellee,**

v.

**Robert E. WALLACE a/k/a Pete, Appellant.**

**No. 89–1547.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 16, 1989.

Decided Feb. 5, 1990.

Rehearing and Rehearing En Banc Denied March 19, 1990.

Charles E. Kirksey, Jr., St. Louis, Mo., for appellant.

---

Steven E. Holtshouser, St. Louis, Mo., for appellee.

Before BOWMAN and BEAM, Circuit Judges, and ROSS, Senior Circuit Judge.

BEAM, Circuit Judge.

On November 18, 1988, the government filed a three-count indictment against Robert E. Wallace. Wallace pleaded guilty to count I, which charged him with possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (1982), and to count III, which charged him with structuring a financial transaction to evade federal currency reporting requirements in violation of 31 U.S.C. § 5324(3) (Supp.V 1987). Under the plea agreement, the government dropped count II, which charged Wallace with possession of more than 500 grams of cocaine, and dismissed a criminal forfeiture claim to real estate owned by Wallace. The district court determined that Wallace was a "career offender," assigned a base offense level of 34 pursuant to section 4B1.1 of the Federal Sentencing Guidelines, and sentenced Wallace to imprisonment for 262 months. Wallace appeals his sentence. We affirm.

## I. BACKGROUND

The parties stipulated to the following facts for purposes of sentencing. On February 25, 1988, Wallace purchased a salvage yard and a tract of land at 604 East Carrie Avenue in St. Louis for $52,354.07. The real estate agent who handled the transaction stated that he saw Wallace with approximately $52,000 in United States currency. The title company handling the transaction, however, required a cashier's check to pay for the land rather than currency. A local bank indicated that it would issue a cashier's check for the purchase price, but a Currency Transaction Report would have to be completed because the currency transaction was greater than $10,000. Wallace inquired whether the title company would accept several cashier's checks rather than one cashier's check for the total amount. The title company re-

sponded that it would. Thus, Wallace and an associate purchased six cashier's checks from three banks in amounts less than $10,000. At the closing on February 25, 1988, Wallace presented the six cashier's checks and $8,000 in currency to pay for the tract of land and salvage yard.

Several months later, Carol Bilal telephoned Wallace to ask if he was interested in purchasing a large amount of cocaine. Bilal is the wife of one of Wallace's former suppliers of narcotics. She had agreed to cooperate with law enforcement officials and consented to the recording of two telephone conversations with Wallace. During the first recorded telephone conversation on November 2, 1988, Wallace told Bilal to call him the next morning at the apartment of Rhonda Mobley. Bilal telephoned Wallace the next morning and during that recorded conversation Wallace stated that he wanted the transaction for one and one-half kilograms of cocaine to occur at Mobley's apartment. Bilal said that she would have to check with her supplier to see if he would conduct the transaction at Mobley's apartment. Because the police wanted Wallace to bring the purchase money to Bilal and this attempt failed, federal agents applied for a search warrant for Mobley's apartment located at 4900 Euclid Terrace, apartment 2E, in St. Louis.

On the evening of November 3, 1988, the police executed the warrant, searched Mobley's apartment and seized a canister with six plastic bags and a folded piece of paper containing 160.97 grams of cocaine. The police also seized $20,806, a triple beam scale, a photograph of Wallace and other individuals, eight pieces of custom-made jewelry, and numerous personal documents belonging to Wallace. Following the search, Wallace was arrested at Cheryl's Pleasure Seekers Lounge in St. Louis.

After Wallace pleaded guilty to two counts of the indictment, a presentence report was prepared. Wallace was found to be a career offender and assigned a base offense level of 34 under the sentencing

guidelines.[1] The district court sentenced Wallace to imprisonment for 262 months on count I and 60 months on count III, which sentences were to be served concurrently. The court also fined Wallace $17,500 on count I plus a special assessment of $100.00. Wallace appealed the sentence on three grounds: (1) that he was not given notice that he would be subject to an increased penalty as a career offender under section 4B1.1 of the sentencing guidelines; (2) that penalties for career offenders are irrational and excessive; and (3) that his plea bargain agreement was effectively a nullity because the court applied the dismissed, non-charged acts of count II when sentencing Wallace pursuant to section 1B1.3(a)(1) of the sentencing guidelines.

## II. DISCUSSION

Wallace argues, as indicated, that he did not have notice that he would be subject to an increased penalty under section 4B1.1 as a career offender.[2] Wallace argues that 21 U.S.C. § 851(a)(1) (1982)[3] applies in his case. Pursuant to section 851(a)(1), the United States attorney must file with the court and serve on the defendant a written information which lists the defendant's previous convictions before a defendant can receive increased punishment. Wallace argues that the filing of an information complies with due process requirements. However, no information was filed in his case. Wallace asserts that he would have proceeded to trial and not entered a plea of guilty if he had known the degree of sentence enhancement available.

Congress enacted section 851(a)(1) and the procedure for filing an information to protect defendants from receiving increased *statutory* sentences set forth in Part D of the Act resulting from prior, incorrectly charged offenses, *see United States v. Bell*, 345 F.2d 354, 356 (7th Cir.), *cert. denied*, 382 U.S. 882, 86 S.Ct. 175, 15 L.Ed.2d 123 (1965), and to give defendants the opportunity to show that they were not the persons convicted. *See Baca v. United States*, 312 F.2d 510, 513 (10th Cir.1962), *cert. denied*, 373 U.S. 952, 83 S.Ct. 1682, 10

1. In the stipulation of facts relevant to sentencing, Wallace's criminal history was outlined as follows:

Mr. Wallace has a criminal history and the following may be relevant in determining Mr. Wallace's appropriate Criminal History Category:

(1) in 1960, Mr. Wallace was convicted of Armed Robbery in the State of Tennessee, sentenced to eight (8) years in prison and paroled in 1969;

(2) in 1976, Mr. Wallace as [sic] convicted of child molestation, stealing over $50 and failure to appear on a felony in the State of Missouri, for which he received a sentence of three (3) years in prison; and

(3) in 1981, Mr. Wallace was convicted of four (4) counts of violation of Missouri's controlled substance laws sentenced to a total of seven (7) years in prison, paroled in 1985 and is presently still on active parole through the Missouri State Department of Probation and Parole.

*United States v. Wallace*, No. 88–288 CR(2), stipulation of facts relevant to sentencing at 6–7 (E.D.Mo. Jan. 17, 1989).

2. Section 4B1.1 of the sentencing guidelines provides:

A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. If the offense level for a career criminal from the table below is greater than the offense level otherwise applicable, the offense level from the table below shall apply. A career offender's criminal history category in every case shall be Category VI.

| Offense Statutory Maximum | Offense Level |
|---|---|
| (A) Life | 37 |
| (B) 25 years or more | 34 |
| (C) 20 years or more, but less than 25 years | 32 |
| (D) 15 years or more, but less than 20 years | 29 |
| (E) 10 years or more, but less than 15 years | 24 |
| (F) 5 years or more, but less than 10 years | 17 |
| (G) More than 1 year, but less than 5 years | 12 |

3. 21 U.S.C. § 851(a)(1) provides:

No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States Attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictons [sic] to be relied upon.

L.Ed.2d 706 (1963). In this case, Wallace did not claim that his previous convictions had been incorrectly charged, nor did he claim that he was not the person previously convicted. Rather, Wallace argues that his due process rights were violated because the notice procedures of section 851(a)(1) were not followed.

As previously indicated, Wallace was sentenced pursuant to the sentencing guidelines which became effective after section 851(a)(1) was passed. There is nothing in the guidelines that provides that an information must be filed in order to rely upon prior offenses. Section 851(a)(1), therefore, is limited to situations in which a convicted defendant's *statutory* minimum or maximum penalty is enhanced under Part D of Title 21, and not to situations in which the defendant is assigned a guidelines base offense level and receives an increased sentence, which is within a statutory range.

In this case, Wallace pleaded guilty to a violation of 21 U.S.C. § 841, and his statutory maximum penalty under that statute was not enhanced. Thus, the notice procedures of section 851(a)(1) do not apply. Further, we find that Wallace had actual notice that the court knew of his prior convictions and that it could use them in sentencing. In a November 10, 1988 Detention Order, the magistrate stated that Wallace had a substantial criminal record and listed Wallace's prior offenses. As previously indicated, in the stipulation of facts relevant for sentencing, Wallace stipulated that he had a criminal history and that his prior convictions could be relevant in determining his appropriate criminal history category. Also, during the hearing on his guilty plea, Wallace stated that he understood that the maximum sentence on count I was 30 years and that the court could choose to impose this maximum penalty in lieu of the sentence suggested in the plea bargain agreement. *See* Trial Transcript of Plea of Guilty, at 12, 14. Wallace received a sentence of 262 months. Accordingly, we find that Wallace had actual notice that his sentence could be increased under the sentencing guidelines and we find no due process violation.

We have carefully reviewed Wallace's other arguments and find that they are without merit. The penalty range under the guidelines for career offenders is neither irrational nor excessive. Also, Wallace's claim that his plea agreement was effectively a nullity has no basis. Because the district court properly sentenced Wallace under the career offender range of the sentencing guidelines, this court will not address the issue of whether the district court applied the dismissed act of attempting to possess one and one-half kilograms of cocaine, as alleged in count II, in sentencing Wallace. The career offender range was greater than the range that would have been applied if the one and one-half kilograms of cocaine had been added to the six ounces of cocaine that Wallace was charged with in count I. Thus, the district court did not have to decide whether the one and one-half kilograms of cocaine should be considered in sentencing.

## III. CONCLUSION

For the reasons set forth above, we find that no due process violation occurred and the decision of the district court is affirmed.