UNITED STATES of America, Appellee,

v.

Willis Louis ADAMS, a/k/a Robyn Boutte, Appellant.

No. 90–5266.

United States Court of Appeals, Eighth Circuit.

Submitted March 11, 1991.

Decided July 1, 1991.

Mary Catherine Bonner, Fort Lauderdale, Fla., for appellant.

Andrew Dunne, Asst. U.S. Atty., Minneapolis, Minn., for appellee.

Before WOLLMAN and BEAM, Circuit Judges, and FLOYD R. GIBSON, Senior Circuit Judge.

WOLLMAN, Circuit Judge.

Willis Louis Adams appeals his conviction for conspiracy to possess with intent to distribute cocaine, 21 U.S.C. § 846, interstate travel to facilitate unlawful drug activity, 18 U.S.C. § 1952(a), and possession with intent to distribute approximately forty kilograms of cocaine, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 846. Adams also appeals from the district court's [1] sentence of 400 months' imprisonment. We affirm both the conviction and the sentence.

## I.

From April to September 1989, Adams directed the transportation of approximately forty kilograms of cocaine from his house in California to a "stash" house in St. Paul, Minnesota. Adams conspired with four women, Jeanne Hunt, Ursula Smith, Gina Giombetti, and Diane Clark, for the delivery of the drugs on overnight flights to Minnesota. Hunt, Smith, and Giombetti acted as couriers. Clark operated the stash house.

Early in September 1989, Smith befriended a certain "Gil," who persuaded her to contact the Drug Enforcement Agency in California and report the cocaine distribution conspiracy. Smith told the DEA that a drug shipment would be made the night of September 9, 1989, and the California DEA agents informed Minnesota police. On the evening of September 9, Los Angeles police officers watched Adams, Smith, and Giombetti leave Adams' home in California, drive to the airport, buy airline tickets, and board an overnight flight to Minnesota. When they arrived at the Minneapolis–St. Paul International Airport on the morning of September 10, Minnesota police officers watched the three deplane and split up. Smith and Giombetti took a taxi to a White Castle restaurant, where Clark was to pick them up. The police officers arrested the three women in the parking lot and found two kilos of cocaine in their carry-on baggage. As these arrests were being made, Adams drove up in a taxi. Adams motioned for the taxi to keep driving, but it was stopped by police, who then arrested Adams.

Clark and Giombetti were charged with Adams in a four-count indictment. Clark pleaded guilty to attempted possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 846. Giombetti pleaded guilty to possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 846. Hunt and Smith were not charged with Adams. Smith, Clark, and Giombetti testified at trial about their involvement in Adams' cocaine enterprise.

## II.

Adams contends that he was not provided with a certain statement allegedly given to DEA agents by prosecution witness Ursula Smith. He argues that this constituted a violation of the Jencks Act and requires a reversal of his conviction. Adams further argues that an accumulation of errors rendered the entire trial procedure unfair and denied him his right to due process. Adams finally argues that the procedures used to determine his sentence were faulty and that he was unfairly sentenced as a career offender on the basis of insufficient evidence.

Smith testified on cross-examination that she had given a handwritten statement to

1. The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

DEA agents in California during the first few days of September. Following his cross-examination of Smith, Adams' trial counsel was provided with a copy of a handwritten statement dated September 11 and signed by Smith and a DEA agent. Adams contends that the September 11 statement is not the statement to which Smith referred in her testimony at trial, and that even if it is the one to which she referred, it was provided too late-after cross-examination—and thus did not satisfy the requirements of the Jencks Act.

The Jencks Act provides that after a witness for the government has testified on direct examination, a defendant may move for the production of any statement of that witness in the possession of the government that relates to the subject matter as to which the witness testified. 18 U.S.C. § 3500. At the close of the government's direct examination of Smith, Adams made a demand for all Jencks Act material. At the time of the request, the prosecutor did not have Smith's September 11 handwritten statement.

During cross-examination, Smith said that she had made a statement that was "couple of pages" in length that she and a DEA agent had signed. She confirmed that she gave only one handwritten statement. Defense counsel then renewed his request for Jencks material, specifically Smith's handwritten statement. The prosecutor told the court that he would continue to look for the statement. Upon further inquiry, the prosecutor received a copy of a handwritten statement signed by Smith and DEA agent Lynn Wood, dated September 11, 1989, from the DEA in California. When the trial resumed, the prosecutor gave a copy of the statement to the court and to defense counsel.

█ We will not overturn a conviction for noncompliance with the Jencks Act where there is no indication of bad faith on the part of the government and no indication of prejudice to the defendant. *United States v. Roberts*, 848 F.2d 906, 908 (8th Cir.1988), *cert. denied*, 488 U.S. 931, 109 S.Ct. 322, 102 L.Ed.2d 340 (1988); *United States v. Moeckly*, 769 F.2d 453, 464 (8th Cir.1985), *cert. denied*, 476 U.S. 1104, 106 S.Ct. 1947, 90 L.Ed.2d 357 (1986). Adams does not assert that the government acted in bad faith, and he has failed to establish that lack of the statement he seeks resulted in any prejudice to his case.

█ The district court found that the September 11 statement was entirely consistent with Smith's testimony. We agree. Moreover, Smith's testimony was corroborated by Clark and Giombetti. As was the district court, we are convinced that the prosecutor exercised due diligence in his efforts to comply with the requirements of the Jencks Act, and we are satisfied that another statement (written prior to September 11) simply does not exist. It is impossible to say whether there ever was such a document, but the government can not produce what it does not have. Adams' counsel vigorously cross-examined Smith, and we conclude that the handwritten statement provided to Adams' counsel following cross-examination would not have materially added to the examination's effectiveness if it had been provided to counsel before cross-examination.

Adams argues that a number of errors committed by the trial court denied him a fair trial and due process. Adams contends that the case had dominant and prejudicial racial overtones because it was tried in a predominately white locale. He argues that because certain voir dire inquiry with regard to race and racial attitudes was precluded, the trial was unfair. We find this argument without merit. The district court acted well within its broad discretion in conducting voir dire in such a way as to screen the jury for bias and racial prejudice. The record does not reveal that the issue of race was in any way an issue at trial or a factor in Adams' conduct. The district court nevertheless questioned the panel of potential jurors thoroughly about their attitudes toward minorities.

Adams' remaining arguments regarding his conviction are without merit and do not warrant further discussion.

## III.

The district court sentenced Adams to 400 months' imprisonment, followed by an 8–year term of supervised release on Count I; 60 months' imprisonment, followed by a 3–year term of supervised release on Count II; and 400 months' imprisonment, followed by an 8–year term of supervised release on Count III; all to be served concurrently.

■ The district court sentenced Adams as a career offender under Sentencing Guidelines § 4B1.1. Adams contends that the district court erred in doing so because the government failed to give Adams notice that it intended to urge that Adams' sentence be enhanced under the provisions of section 4B1.1.

Prior to trial, the government served and filed an information pursuant to 21 U.S.C. § 851 that Adams would be liable to a sentence of imprisonment of not less than ten years nor more than life if he was found guilty of Count I and/or Count III of the indictment because Adams had been convicted of a felony drug offense in California in 1983. Adams argues that although this section 851 notice may have satisfied the requirements for enhancement of a sentence under the provisions of 21 U.S.C. § 841, the district court erred in not complying with the requirements of section 851 and instead sentencing Adams under the provisions of Guidelines § 4B1.1. Adams acknowledges that our decisions in *United States v. Wallace*, 895 F.2d 487 (8th Cir.1990), and *United States v. Auman*, 920 F.2d 495 (8th Cir.1990), hold that the requirements of section 851 do not apply to sentences imposed under section 4B1.1, but asks us to reconsider *Wallace* and *Auman* in the light of *United States v. Williams*, 899 F.2d 1526 (6th Cir.1990), where the Sixth Circuit held that a defendant was entitled to a section 851 notice even though he had entered into a plea bargain that stated that the offense pleaded to carried a ten-years-to-life sentence.

Whatever the merits of the *Williams* decision, we are not disposed, even if we were free to do so, to depart from our *Wallace* and *Auman* holdings. (We note in passing that the First Circuit has followed *Wallace*. *United States v. Sanchez*, 917 F.2d 607, 616 (1st Cir.1991), *cert. denied*, —— U.S. ——, 111 S.Ct. 1625, 113 L.Ed.2d 722 (1991).) Nor do we see anything in the Supreme Court's recent decision in *Burns v. United States*, —— U.S. ——, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991), that calls *Wallace* and *Auman* into question. In *Burns*, the defendant had entered into a plea bargain that called for a sentence falling within a particular offense level/criminal history category, an agreement that was confirmed in the probation officer's presentence report. It was not until the sentencing hearing that the defendant learned that the district court intended to depart upward from the Guidelines sentencing range. The Court held that Rule 32 of the Federal Rules of Criminal Procedure requires notice to a defendant before a district court may *sua sponte* depart upward from the Guidelines sentencing range.

In Adams' case, of course, there was no plea bargain. Moreover, the government filed a section 851 information, and the presentence report clearly set forth Adams' prior convictions and stated that Guidelines § 4B1.1 was applicable to Adams, that Adams fell within the category of a career criminal under section 4B1.1, and that such a status resulted in an offense level of 37 and a criminal history of VI, with a resulting imprisonment range of from 360 months to life imprisonment. Thus, none of the concerns expressed by the Court in *Burns* are present in Adams' case, and we therefore conclude that his attack upon the procedure under which he was adjudged a career criminal is without merit.

■ Likewise, we reject Adams' contention that insufficient evidence existed to support the district court's factual findings that Adams was a career criminal within the meaning of section 4B1.1. To establish the career criminal status, section 4B1.1 requires, among other things, two prior felony convictions of either a crime of violence or a controlled substance offense. Adams has at least two prior felony drug convictions, both of which are final. Ac-

cordingly, the district court did not err in finding that Adams was a career criminal within the meaning of the Guidelines.

We have considered, and find to be without merit, Adams' other challenges to the procedures under which he was sentenced.

The judgment and sentence of the district court are affirmed.