UNITED STATES of America, Appellee,

v.

Lawrence C. REDDING, Appellant.

No. 93–2348.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 10, 1993.

Decided Feb. 11, 1994.

Counsel who presented argument on behalf of the appellant was Douglas Peine of St. Paul, Minnesota.

Counsel who presented argument on behalf of the appellee was Mark R. Pitsenbarger, Assistant U.S. Attorney, of Minneapolis, Minnesota.

Before FAGG and WOLLMAN, Circuit Judges, and VIETOR,[*] District Judge.

VIETOR, District Judge.

Lawrence C. Redding appeals his conviction on three counts of being a felon in possession of a firearm. 18 U.S.C. § 922(g). He was sentenced as an armed career criminal to a term of 327 months in prison. 18 U.S.C. § 924(e)(1). On appeal, Redding asserts that the trial court[1] erred: (1) by not severing one of the four counts in the indictment; (2) by not granting a mistrial after the prosecutor introduced allegedly improper rebuttal evidence in violation of the Jencks Act, 18 U.S.C. § 3500; (3) by not granting a mistrial after the prosecutor made allegedly improper comments in his closing argument; and (4) by sentencing him as an armed career criminal. We affirm.

## BACKGROUND

A four-count indictment charged Redding with four separate violations of 18 U.S.C. § 922(g) involving three separate incidents. Count I relates to a December 15, 1991 incident when Redding was stopped by police in possession of a .44 magnum revolver. Count II involves a May 13, 1992 robbery of a

---

[*] The HONORABLE HAROLD D. VIETOR, United States District Judge for the Southern District of Iowa, sitting by designation.

1. The Honorable David S. Doty, United States District Judge for the District of Minnesota.

halfway house with a .22 caliber handgun; Count III involves a .22 caliber bullet left at the scene of that May 13 robbery. Count IV involves Redding's May 18, 1992 arrest at his mother's house where police found a .12 gauge shotgun in Redding's mother's bed. Redding was found guilty on Counts I, II and III, and not guilty on Count IV.

## DISCUSSION

### I. Severance of Count I

■ Redding moved on three separate occasions to sever Count I from the other counts under Federal Rule of Criminal Procedure 14, which permits the court to order separate trials of counts if it appears that a defendant is prejudiced by a joinder of offenses. "In order to gain a severance, a defendant must make a persuasive and detailed showing regarding the testimony he would give on the one count he wishes severed and the reason he cannot testify on the other counts." *United States v. Possick,* 849 F.2d 332, 338 (8th Cir.1988). A denial of a motion to sever will be reversed only if there has been an abuse of discretion resulting in clear prejudice. *Id.*

Redding contends that his testimony on Count I would have been that "he was not the perpetrator of the robbery" but the "victim," and that "the sole reason that he was in possession of the firearm was because he had just seized it from the control of another individual who was attempting to use it against him." Renewed Motion for Severance of Counts at 3–4. He offered the district court three reasons why he could not testify on the other counts: (1) the government would be free to impeach him based on his extensive criminal record; (2) he would "expose himself unnecessarily to the risk that the details of his testimony would differ" from an earlier statement made by him; and (3) the jury may dislike him or find his testimony not credible. Redding argued that he was willing to accept the risks of testifying as to Count I, for which he had important testimony to offer, but that he should not have to accept these risks as to the other

counts, for which he had no testimony to offer. The district court denied Redding's motion to sever.

■ Redding failed to make the requisite "persuasive and detailed showing" both as to the testimony he wished to give on Count I, and the reasons he did not want to testify on the other counts. His proffered testimony as to Count I, which presumably goes to a defense of justification, was not sufficiently detailed. He offered no specific details, such as where and how the event occurred, why he had no reasonable, legal alternative to gaining possession of the firearm, and how much time had elapsed between the time he seized the gun and the time he was approached by the police officers. In short, his conclusory allegations were not sufficiently persuasive or detailed to entitle him, if he were to testify at trial with no greater specificity, to a jury instruction submitting the defense of justification.[2]

Redding's first reason for not wanting to testify on the other counts was that the government would be free to impeach him with his prior criminal record. But even if Count I had been severed, the jury still would have known that Redding was a convicted felon because it is an element of 18 U.S.C. § 922(g), the crime for which he was tried on Counts II, III and IV. Any further prejudicial effect to Redding that would arise from using these prior convictions for the additional purpose of impeachment would be minimal. Redding's second reason for not wanting to testify was that the details of his testimony at trial may differ from prior statements made by him at the time of his arrest. Redding, however, failed to offer any explanation about the content of his prior statements or why his testimony at trial would differ. Furthermore, if only the "details" of his testimony were inconsistent with prior statements, the prejudicial effect again would be negligible. Redding's third reason for not wanting to testify, that the jury may dislike him or find his testimony incredible, is speculative and, in any event, both branches

---

**2.** We assume, but do not decide, that a justification defense is cognizable in cases involving 18

U.S.C. § 922(g).

of this disjunctive "reason" are not valid types of reasons for granting a severance. Every litigant runs the risk that he or she might not be liked or believed. The district court did not abuse its discretion in denying a severance of Count I.

## II. Jencks Act

At Redding's trial the government called Sgt. Robert Tichich, of the Minneapolis Police Department, as part of its case in chief. Sgt. Tichich testified about the May 18, 1992 arrest of Redding at his mother's house where police found a shotgun in his mother's bed. This testimony related only to Count IV. After the government rested, the defense called Carolyn Schwandt, who testified that she had been with Redding the morning of May 13, 1992, but parted company with him at about 12:30 p.m. that day and next saw Redding at his mother's house that night. Her testimony related only to Counts II and III. Immediately following Schwandt's direct testimony, the government disclosed to defense counsel notes taken by Sgt. Tichich during an interview of Schwandt on May 20, 1992. On cross-examination by the government, Schwandt denied seeing Redding with the proceeds of the robbery on the night of May 13, 1992, and denied making such a statement to Sgt. Tichich. This cross-examination testimony again related only to Counts II and III.

The government recalled Sgt. Tichich as a rebuttal witness who testified that he interviewed Schwandt on May 20, 1992, and that she told him that she had seen Redding with a metal cash box and several government checks the night of the May 13 robbery but was afraid to implicate Redding because she feared he or a member of his family would kill her. Sgt. Tichich had memorialized these statements in his rough notes of the interview, the notes that were disclosed to defense counsel just prior to cross-examination of Schwandt. After Sgt. Tichich testified, Redding moved for a mistrial claiming that Sgt. Tichich's notes were Jencks Act material which should have been disclosed

three days before trial as ordered by the court. The court denied the motion.

A district court's ruling on Jencks Act material will be upheld unless it is clearly erroneous. *United States v. Grunewald,* 987 F.2d 531, 535 (8th Cir.1993). The denial of a motion for a mistrial will only be reversed on a showing of abuse of discretion. *United States v. Hernandez,* 779 F.2d 456, 458 (8th Cir.1985).

The Jencks Act provides in relevant part:

(b) After a witness called by the United States has testified on direct examination, the court shall, on motion by the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified.

18 U.S.C. § 3500. Sgt. Tichich's notes are not Jencks Act material as to the direct testimony he gave on Count IV in the government's case in chief because they do not relate to the subject matter of that testimony. The notes relate to statements made by Schwandt about what she saw on the night of the May 13 robbery, for which Redding was charged in Counts II and III. Furthermore, the notes do not qualify under the Jencks Act as a statement made by Schwandt.[3] Even if they did, there was no Jencks Act obligation to disclose the notes because Schwandt was not called as a witness for the government. The district court did not abuse its discretion in denying the motion for mistrial.

## III. Closing Argument

The attorney for the government made the following statements during closing argument:

Let's talk for a moment about the interrelationship of these three guns. We've heard three separate fact situations, December 15th, May 13th, May 18th. Let's talk for a moment about how they relate to each other.

. . . .

---

**3.** Under 18 U.S.C. § 3500(e)(1), a "statement" is defined as "a written statement made by said witness and signed or otherwise adopted or ap-

proved by him." There is no claim that Schwandt ever signed, adopted, or approved Sgt. Tichich's notes.

[W]hat we have here is a guy, Lawrence Redding, who was caught with his hands in the supposed cookie jar not once but three times in a six-month period, in possession of firearms that he knew he shouldn't have on him.

[W]hen you put them all together and you look at the fact that this isn't once but three times, I suggest to you that each of those are foolish excuses. Each of those things, on all of those things, when looked together, establishing method of operation of Lawrence Redding of possession guns [sic].

A person who is not supposed to possess a gun can conceivably, and I will agree, find himself a victim of circumstances once by being placed in or around a gun that he shouldn't be, but three times?

Defense counsel objected on the ground that "[t]hese are separate offenses to be viewed separately." The court overruled the objection. When the government's attorney finished his closing argument, defense counsel moved for a mistrial on grounds that the government's closing argument violated Federal Rule of Evidence 404(b). The district court denied defendant's motion.

■ A district court's denial of a motion for a mistrial will be upheld unless there was an abuse of discretion. *Hernandez*, 779 F.2d at 458 (8th Cir.1985). A conviction will be reversed for prosecutorial misconduct only if "the prosecutor's remarks were in fact improper" and they "were so offensive as to deprive the defendant of a fair trial." *Id.*

Federal Rule of Evidence 404(b) states in part:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, . . . .

■ The prosecutor did not mention "other crimes, wrongs, or acts"—he mentioned only the specific charges being tried. No mention was made in the challenged portion of the argument of Redding's prior convic-

tions. The district court did not abuse its discretion in denying the motion for mistrial.

## IV. Sentencing

■ The district court sentenced Redding as an "armed career criminal" under 18 U.S.C. § 924(e)(1) after finding that Redding had at least three prior convictions for violent felonies. The district court relied on three 1984 Minnesota state court convictions for aggravated robbery, and, as an alternative basis, on three Illinois state court convictions for robbery between 1975 and 1979. Redding argues that the district court improperly relied on one of the Illinois convictions and on all of the Minnesota convictions in classifying him as an armed career criminal.

For purposes of § 924(e)(1), the government must make an initial showing that a defendant has three prior convictions for violent felonies. *See United States v. Wilkinson*, 926 F.2d 22, 28 (1st Cir.1991); *United States v. Ruo*, 943 F.2d 1274, 1276 (11th Cir.1991); *United States v. Gallman*, 907 F.2d 639, 643 (7th Cir.1990). A certified record of conviction or a presentence investigation report is usually sufficient to satisfy this initial showing. *See United States v. Paleo*, 967 F.2d 7, 13 (1st Cir.1992); *see also Ruo*, 943 F.2d at 1276 (government's burden is met when it introduces evidence of three prior violent felony convictions). With this showing made, the burden shifts to the defendant to prove by a preponderance of the evidence, that his prior convictions cannot be used for sentence enhancement. *See United States v. Day*, 949 F.2d 973, 982 (8th Cir. 1991). Redding contends that the government failed to make its initial showing with respect to the 1975 Illinois conviction because the certified statement of conviction submitted by the government bears the name "Walter Johnson" as the defendant.

■ We believe the evidence presented by the government was sufficient to satisfy its initial showing with respect to the 1975 Illinois conviction. Redding's presentence report (PSR) indicated that Redding had three convictions for robbery and armed robbery in Illinois: 1) a May 17, 1979 conviction for armed robbery; 2) a February 14, 1977 conviction for robbery; and 3) a November

18, 1975 conviction for robbery. PSR at para. 26–28. The government also introduced three certified statements of conviction. The 1979 statement is captioned "People of the State of Illinois vs. Lawrence Redding otherwise called Lawrence Johnson." The 1977 statement is captioned "People of the State of Illinois vs. Lawrence Redding." The 1975 statement, case number 75–2682, is captioned "People of the State of Illinois vs. Walter Johnson" and indicates that a sentence of three years probation was imposed by Judge Machala.

The government then produced evidence that the "Walter Johnson" convicted in 1975 was in fact Lawrence Redding. A document prepared by the Cook County, Illinois state's attorney office prepared after Redding's 1977 conviction indicated that Redding had a prior record: "On Probation for Robbery (3 yrs.) on November 18, 1975." A similar document prepared after Redding's 1979 conviction notes:

> This defendant was prosecuted as a *career criminal defendant* in that he was convicted of the following felony charges prior to this case: 11/18/75—robbery—75–I–2682— 3 yrs prob.—Judge Machala; 2/14/77— robbery 1–3 yrs. Judge McElliott.

The date of conviction, case number, length and type of sentence, and the name of the sentencing judge match the information contained in the 1975 statement of conviction. This evidence, and the fact that Redding has at times used the last name of Johnson, was sufficient to establish that the 1975 conviction pertained to Redding. Redding proffered no evidence that the 1975 Illinois conviction did not pertain to him. Therefore, the district court properly concluded that it should be used against Redding for purposes of sentence enhancement.

Because the three Illinois convictions are sufficient to sentence Redding as an armed career criminal, we do not address Redding's arguments with respect to the Minnesota convictions.

Accordingly, defendant's convictions and sentence are affirmed.