# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-4345

_____

United States of America,

        Appellee,

v.

Andre Green,

        Appellant.

\* \* \* \* \* \* \* \* \* \*

Appeal from the United States
District Court for the
Eastern District of Missouri.

_____

Submitted: May 15, 1998

Filed: August 19, 1998

_____

Before BOWMAN, Chief Judge, HEANEY and HANSEN, Circuit Judges.

_____

BOWMAN, Chief Judge.

Andre Green was convicted by a jury of conspiracy to possess with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (1994). He appeals his conviction, arguing that the District Court[1] abused its discretion by admitting into evidence testimony regarding a prior arrest for distribution of cocaine base, and that his constitutional rights were violated by the government's failure to

_____

[1]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri.

provide defense counsel, before the start of trial, with a copy of the government's trial brief and a transcript of a government witness's grand jury testimony.  We affirm.

On May 6, 1997, St. Louis police officers working drug interdiction at a UPS facility identified a suspicious incoming package, obtained a search warrant to open the package after a drug-detecting canine alerted the officers to the presence of narcotics, and discovered inside the package just over 187 grams of cocaine base and 436 grams of marijuana.  The officers repackaged a portion of the drugs for use in a controlled delivery but, because the package was addressed to a non-existent location and thus could not be delivered, requested that UPS employees alert the officers should someone inquire at the facility about the package.

Later that day, UPS employees notified police that Juwana Hobson had attempted to retrieve the package.  Officers instructed the UPS employees to inform Hobson that the package was on a delivery truck and not available for pick-up at the station that day, but would be returned to the facility that evening for pick-up the following morning.

The next morning Hobson returned to the UPS facility, picked up the package, and was arrested by officers shortly after driving away with the package.  Hobson, who began cooperating with police immediately after her arrest, explained that Green had asked her to pick up the package for him.  She informed police that Green and Andre Spikes had provided her with the UPS tracking number necessary to identify the package, and that Green and Spikes were waiting for her to deliver the package to a prearranged address.  During Hobson's interview at the police station, she received a number of messages from Green on her pager.  The officers eventually instructed Hobson to call Green, tell him that she had retrieved the package but that her car had broken down, and ask him to pick her up at a specific location.

Hobson, followed by the officers, drove to the spot where she had told Green her car broke down, raised the car's hood, and waited for Green and Spikes. Shortly thereafter, Green and Spikes arrived and, rather than take the package from the back seat of Hobson's car, Green started the car and instructed Hobson to drive her car (still containing the package) back to her apartment where he and Spikes would meet her.

Upon arrival at Hobson's apartment, Green and Spikes entered the building first, followed by Hobson who was carrying the package, and detectives who were surveilling the transaction. As Hobson approached the door to her apartment, Green and Spikes saw the detectives following Hobson and ran up a flight of stairs, attempting to evade arrest. The officers arrested Green and Spikes on the second floor of the building and Green, while being taken into custody, insisted that he could not be arrested because he had not taken possession of the box.

Green first argues that the District Court erred in allowing the introduction into evidence of a police officer's testimony regarding Green's 1993 arrest for possessing and selling cocaine base. The District Court admitted this testimony under Federal Rule of Evidence 404(b), which allows for the admission of "other crimes" evidence only for limited purposes, such as showing motive, intent, opportunity, or knowledge. Fed. R. Evid. 404(b). This evidence is admissible if (1) it is relevant to a material issue; (2) it is similar in kind and not overly remote in time to the crime charged; (3) it is supported by sufficient evidence; and (4) its potential prejudice does not substantially outweigh its probative value. See United States v. Anderson, 879 F.2d 369, 378 (8th Cir.), cert. denied, 493 U.S. 982 (1989). Prior bad acts evidence may be admitted "to prove any relevant issue other than the character of the defendant or his propensity toward criminal activity." United States v. McDaniel, 773 F.2d 242, 247 (8th Cir. 1985). The district court has broad discretion in determining whether to admit evidence of other crimes, and this Court will overturn its decision only if it can be shown that the "'evidence clearly had no bearing upon any issues involved.'" United States v. Turner,

104 F.3d 217, 222 (8th Cir. 1997) (quoting <u>United States v. Baker</u>, 82 F.3d 273, 276 (8th Cir.), <u>cert. denied</u>, 117 S. Ct. 538 (1996)).

Green argues that his 1993 arrest for distribution of cocaine base is not close enough in time or similar enough in kind to be admitted as other crimes evidence under Rule 404(b). This Court applies a standard of reasonableness, as opposed to a standard comprising an absolute number of years, in determining whether a prior offense occurred within a relevant time frame for purposes of Rule 404(b). <u>See</u> <u>United States v. Burk</u>, 912 F.2d 225, 228 (8th Cir. 1990). Green's prior arrest occurred only three and one-half years prior to his arrest for the charged offense, a separation well within permissible time boundaries for the introduction of Rule 404(b) evidence. <u>See</u> <u>United States v. McCarthy</u>, 97 F.3d 1562, 1573 (8th Cir. 1996), <u>cert. denied</u>, 117 S. Ct. 1011, 1284 (1997) (17 years separating offenses); <u>United States v. Holmes</u>, 822 F.2d 802, 804-05 (8th Cir. 1987) (12 years); <u>United States v. Engleman</u>, 648 F.2d 473, 479 (8th Cir. 1981) (13 years). Furthermore, Green's prior arrest involved the same narcotic as that involved in the charged crime--cocaine base. <u>See</u> <u>United States v. Sykes</u>, 977 F.2d 1242, 1246 (8th Cir. 1992) (noting that evidence of prior offense involving same drug was relevant in showing knowledge and intent for charged offense). Green was arrested in 1993 for possession with intent to distribute cocaine base, a crime similar in kind to the charged offense of conspiracy to possess with intent to distribute cocaine base. <u>See</u> <u>United States v. Bryson</u>, 110 F.3d 575, 583 (8th Cir. 1997) (noting that distribution of narcotic is similar to conspiracy to distribute same narcotic); <u>United States v. Wint</u>, 974 F.2d 961, 967 (8th Cir. 1992) (noting that evidence of prior arrest for possession of cocaine base sufficiently similar to be admissible in case involving conspiracy to distribute cocaine because "both involved distributable amounts of cocaine"), <u>cert. denied</u>, 506 U.S. 1062 (1993). We conclude that the District Court did not abuse its discretion by admitting pursuant to Rule 404(b) the police officer's testimony regarding Green's prior arrest.

Green likewise contends that the District Court erred in admitting into evidence Hobson's testimony that Green had asked her on a previous occasion, and she had agreed, to pick up a package from the UPS facility. This testimony, according to Green, is irrelevant to the charged crime because the government did not prove that this earlier incident involved a package containing illegal drugs. Defense counsel failed to object to this particular aspect of Hobson's testimony at the District Court's motion in limine hearing, see Trial Transcript Vol. I at 167 ("We have no objection to [Hobson] testifying as to picking up the package."), or at trial. Because Green failed to object to the admission of this testimony, we review only for plain error. See Fed. R. Crim. P. 52(b). Under the plain error standard, this Court lacks authority to consider questions not first raised in the district court "unless (1) the district court committed an error, i.e., deviated from a legal rule, (2) the error is plain, i.e., clear under current law, and (3) the error affected [the defendant's] substantial rights." United States v. Montanye, 996 F.2d 190, 192 (8th Cir. 1993) (en banc). Even if the forfeited error meets the above criteria, we will exercise our discretion to order correction only if the error "'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" Id. (quoting United States v. Olano, 507 U.S. 725, 732 (1993) (quoting United States v. Atkinson, 297 U.S. 157, 160 (1936)). We conclude that the admission of this testimony meets none of the above criteria except, arguably, the first. It therefore does not satisfy the plain error standard and cannot serve as a basis for reversing Green's conviction.

Green next argues that the government violated the Jencks Act, 18 U.S.C. § 3500 (1994), by failing to provide him with a transcript of Hobson's grand jury testimony prior to her direct testimony at trial. The government's violation of the Jencks Act, according to Green, requires that his conviction be overturned. On September 4, 1997, four days before the start of Green's trial, the government mailed by Federal Express a copy of its trial brief and Hobson's grand jury testimony to defense counsel's address of record, unaware that defense counsel had relocated his law office. At one o'clock that afternoon, during direct examination of Hobson, it became

apparent that Green's attorney had not received these documents through the mail. The government immediately provided a copy of both documents and the District Court ordered a recess until eight o'clock the following morning to allow defense counsel time to review the information. The government resumed direct examination of Hobson the following morning.

The Jencks Act does not compel the government to produce a statement or report of a government witness until after the witness has testified on direct examination, after which the defendant may move for the production of any statements in the government's possession made by that witness relating to the subject matter of his testimony. See United States v. Adams, 938 F.2d 96, 98 (8th Cir. 1991), cert. denied, 502 U.S. 1075 (1992). A district court's decision regarding compliance with the Jencks Act will be reversed only if clearly erroneous. See United States v. Redding, 16 F.3d 298, 301 (8th Cir. 1994). Furthermore, we will not overturn a conviction "for noncompliance with the Jencks Act where there is no indication of bad faith on the part of the government and no indication of prejudice to the defendant." Adams, 938 F.2d at 98.

Contrary to Green's assertions, the government did not disclose the transcript of Hobson's grand jury testimony in an untimely manner. Green was provided a copy of this testimony before the government completed its direct examination of Hobson. "'Although in many cases the government freely discloses Jencks Act material to the defense in advance of trial, . . . the government may not be required to do so.'" United States v. Wilson, 102 F.3d 968, 971-72 (8th Cir. 1996) (quoting United States v. White, 750 F.2d 726, 729 (8th Cir. 1984)). Even were we to conclude that the government had failed to comply with the Jencks Act, Green admits that there was no bad faith on the government's part, see Brief of Appellant at 17 (stating that "the defense does not assert that the government withheld these transcripts intentionally"), and has failed to establish prejudice. As noted above, when it became apparent that Green's attorney had not received this document, the District Court made accomodations to allow defense counsel adequate time to prepare for cross-

examination of Hobson.  In these circumstances, Green's Jencks Act argument cannot be sustained.

Finally, Green argues that the government's failure to provide him with a copy of its trial brief until after trial had begun amounts to an improper ex parte argument before the District Court and a violation of his due process rights.  We have held that "because of the potential for prejudice and violation of due process, submission of an ex parte trial brief is improper."  United States v. Earley, 746 F.2d 412, 417 (8th Cir. 1984) (involving government's submission to district court of list of government witnesses and summary of their testimony prior to trial without furnishing copy to defendant), cert. denied, 472 U.S. 1010 (1985).  A defendant is entitled to relief, however, only if he can make "a showing of specific prejudice."  Id.  The government mailed a copy of its trial brief to defense counsel's address of record four days before trial began, having not been informed of counsel's change of address.  When it was discovered that defense counsel had not received a copy of the brief, the government furnished a copy immediately and the District Court recessed the trial to allow Green's attorney an opportunity to review the information contained in the brief.  We cannot conclude that Green was prejudiced in receiving the government's trial brief after the commencement of trial.

The judgment of the District Court is affirmed.

HEANEY, Circuit Judge, concurring.

I concur in the result of this case and recognize that we are bound by this court's prior decisions regarding the sentencing disparity between crack and powder cocaine. Even so, I reiterate my belief that the sentencing disparity is unconstitutional and urge our court to reconsider this issue en banc.  See United States v. Herron, 97 F.3d 234, 240 n.9 (8th Cir. 1996) (citing United States v. Willis, 967 F.2d 1220, 1226 (8th Cir. 1992) (J. Heaney concurring)).

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.