# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-2302

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Michael Richard Williams, | * | Southern District of Iowa. |
| | * | |
| Appellant. | * | |

_____

Submitted: November 17, 1998

Filed: January 22, 1999

_____

Before BEAM and LAY, Circuit Judges, and SIPPEL,[1] District Judge.

_____

LAY, Circuit Judge.

Michael Richard Williams was convicted of possession with intent to distribute methamphetamine in violation of 21 U.S.C. §841(a)(1).[2]  On appeal Williams urges that

_____

[1]The Honorable Rodney W. Sippel, United States District Judge for the Eastern District of Missouri, sitting by designation.

[2]The district court sentenced Williams to 144 months imprisonment, four years of supervised release, and a $100 special assessment.

(1) evidence seized during the search of his person and truck was violative of the Fourth Amendment; (2) the government committed prosecutorial misconduct; (3) the government failed to produce exculpatory evidence; (4) the government used perjured testimony; and (5) he is entitled to a new trial because of newly discovered evidence. We affirm.

## Fourth Amendment

On June 23, 1997, Chief Deputy Michael Bailey and Deputy Wes Schwanke observed a truck stopped in the middle of a road in a rural Iowa area. An individual named Brad Benge operated an automobile salvage and repair business on the land adjacent to the road where the truck was stopped. Chief Deputy Bailey recalled that Benge had previously told him about a burglary at his residence and the theft of car parts from the area around his barn. There were two other reports of recent car burglaries in the vicinity as well. The deputies followed the truck as it turned onto Benge's property and noticed the front plate was missing and that the out-of-state rear plate had expired. The truck stopped in Benge's barn area. One of the deputies approached the individual who exited the vehicle and asked for identification. The individual, who identified himself as Williams, informed the deputy that his driver's license had been suspended. The deputies verified this information on their radio. Williams was arrested and thereafter the deputies searched the cab of his truck where bags of methamphetamine, drug paraphernalia, and several thousand dollars in cash were found. The bags were removed from the truck and placed in the trunk of the officer's patrol car.[3]

---

[3]The bags were taken to the police station and inventoried. The truck was impounded and towed to the police station where, according to Deputy Schwanke's testimony, he conducted an inventory of the truck's remaining contents the following day.

Williams asserts that the deputies had no reasonable articulable suspicion to stop his vehicle or to later conduct a search. We disagree. Considering the totality of the circumstances, there should be little question that the deputies possessed reasonable suspicion to at least stop Williams and request his identification. Deputy Bailey had received reports of two recent nearby car burglaries and of previous thefts at Benge's property. The deputies also noticed the truck had no front license plate and an expired rear license plate. These circumstances, viewed in their totality through the eyes of an experienced officer, reasonably supported the deputies' decision to follow and stop the truck for further investigation.

When Williams informed the deputies that his license was suspended, the deputies effected a custodial arrest and searched Williams and the cab of his truck. There should be no dispute of the right of the deputies to arrest Williams and search the cab of the truck. The law is clear that officers may search the passenger compartment of an automobile and examine the contents of any containers found within the passenger compartment when they have made a lawful custodial arrest of the occupant of an automobile. *See New York v. Belton*, 453 U.S. 454, 460, 101 S. Ct. 2860, 2864 (1981); *United States v. Dawdy*, 46 F.3d 1427, 1430 (8th Cir. 1995). Williams' arrest for driving without a license justified the deputies' search of Williams and of the passenger compartment of the truck. Therefore, we find the district court properly admitted the evidence seized during the search.

**Prosecutorial Misconduct**

Williams asserts the prosecutor made improper comments during opening statements and presented improper evidence that was overly prejudicial to him. We have reviewed the records and find the trial judge did not abuse his discretion in overruling Williams' objections to the various statements. Each claim related to an isolated statement, and Williams refused a curative instruction regarding some of the testimony.

Williams also claims the government presented improper character evidence. A witness for the government, Brad Vance, testified that he sold Williams the truck on behalf of his cousin for $600. Vance testified that Williams gave him methamphetamine for arranging the sale of the truck and that he had seen Williams with methamphetamine. Williams challenges this evidence under § 404(b) of the Federal Rules of Evidence. However, Vance's testimony relates to events occurring around the time period alleged in the superseding indictment, to-wit: June 23, 1997 to September 9, 1997. As the district court correctly observed, this evidence was not admitted under § 404(b), but as an element of the offense of possession with intent to deliver methamphetamine.

## Exculpatory Evidence

Williams asserts the government failed to timely produce the inventory report taken by Deputy Schwanke, marked as Exhibit 76. He urges that this violated *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963). We disagree. The handwritten inventory was taken by Deputy Schwanke after the truck was impounded and the bags containing the methamphetamine had already been removed. The government claims it first learned of Deputy Schwanke's handwritten list when Deputy Schwanke brought it with him to court on the day of his testimony. The list was then immediately delivered to the defense. Defense counsel used the list during his cross-examination of Deputy Schwanke and his re-cross-examination of Chief Deputy Bailey.

The deputies testified that the black bags containing the drugs and paraphernalia were found between the two front seats in Williams' truck. Williams argues that Deputy Schwanke's inventory list of the truck's contents is material and exculpatory because Williams' defense focused on the location and ownership of the drugs, and Deputy Schwanke's inventory did not list the black bags and contained exculpatory margin notations. Williams further claims his defense counsel could not adequately prepare for cross-examination of the deputies to challenge the credibility of their

testimony without earlier production of the inventory. The district court rejected his arguments in its order denying Williams' Motion for a New Trial and found the handwritten inventory was not exculpatory.

We also fail to see how Deputy Schwanke's inventory was exculpatory. As Deputy Schwanke testified, he conducted the inventory of the truck the day after the bags containing the drugs had been removed from the truck at the scene of the arrest. Therefore, Deputy Schwanke's handwritten inventory could not provide any information about the location of the bags or drugs found in the truck because they were not in the truck when he inventoried it. Furthermore, the items listed on Deputy Schwanke's handwritten inventory were incorporated into Exhibit 75, a more detailed police inventory that also contained the bags and drugs seized at the scene of Williams' arrest, which Williams had well in advance of trial.[4] The margin notations next to certain items on Deputy Schwanke's handwritten inventory merely reference the page number where the same items can be found on Exhibit 75, the more detailed inventory. We fail to see how these page references provide any exculpatory information about the location of the drugs within the truck that would have caused the jury to acquit Williams. Both deputies were extensively cross-examined about the inventory exhibits and the location where the bags containing the drugs were found in Williams' trunk.

**Perjured Testimony and Newly Discovered Evidence**

---

[4]The delayed production of Deputy Schwanke's inventory did not violate the Jencks Act, 18 U.S.C. § 3500. The Jencks Act does not compel the government to produce a statement or report of a government witness until after the witness has testified on direct examination. *United States v. Green*, 151 F.3d 1111, 1115 (8th Cir. 1998). The government produced Deputy Schwanke's inventory prior to Deputy Schwanke's testimony, and Chief Deputy Bailey was provided for further cross-examination. Furthermore, we do not overturn a conviction for a Jencks violation in the absence of bad faith on the part of the government and prejudice to the defendant. *Id.* The record reveals no bad faith by the government.

Williams also claims that because both officers denied making handwritten notes in the margin of the inventory, one of the officers necessarily lied and the government offered perjured testimony. Williams claims a handwriting expert obtained after trial would now testify that the notations on the inventory were probably made by Deputy Schwanke. Therefore, Williams sought a new trial on the basis of newly discovered evidence.

We find the trial court did not abuse its discretion in failing to grant Williams a new trial on this ground. Williams has not met the criteria for a new trial based on newly discovered evidence.[5] Williams has failed to show that the handwriting evidence is not merely cumulative and impeaching, he has not shown that it was material, and he has not shown that it would probably produce acquittal at a new trial. Defense counsel already had the opportunity to cross-examine both deputies at trial about the inventory and we fail to see how the handwriting evidence could be used at a second trial for anything other than further impeachment of Deputy Schwanke. The evidence also is not material or likely to produce acquittal because the margin notations referred to corresponding page numbers in the detailed inventory, did not concern the drugs found in Williams' truck, and were not exculpatory.[6]

---

[5]For a trial based on newly discovered evidence, the following criteria must be met: (1) the evidence must in fact be newly discovered since trial; (2) facts must be alleged from which the court may infer the movant has been diligent; (3) the evidence must not be merely cumulative or impeaching; (4) the evidence must be material; and (5) it must be of such a nature that a new trial would probably produce acquittal. *United States v. Willis*, 89 F.3d 1371, 1380 (8th Cir. 1996).

[6]It also is not clear that either deputy perjured himself. The deputies' inconsistent testimony is not necessarily perjury. *See United States v. Nelson*, 970 F.2d 439, 443 (8th Cir. 1992). It is not clear from the record that either deputy actually wrote the margin notations. Williams also has not established that the government knew or should have known that one of the deputies made a false statement. The government received Deputy Schwanke's inventory just before his testimony.

Therefore, we find Williams' claims unavailing.  Any suggestion of discrepancies between the deputies' testimony was pointed out and argued to the jury by defense counsel.   Furthermore, the evidence of Williams' guilt was overwhelming. We find the trial court did not abuse his discretion by failing to grant a new trial.

Judgment affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.