# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

———

No. 00-3123

———

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff/Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the Northern |
| Gregory Lee Newton, | * | District of Iowa. |
| | * | |
| Defendant/Appellant. | * | |
| | * | |

———

Submitted: May 15, 2001
Filed: August 9, 2001

———

Before WOLLMAN, Chief Judge, HANSEN, Circuit Judge, and SCHREIER,[1] District Judge.

———

SCHREIER, District Judge.

Gregory Lee Newton appeals his conviction for possession with intent to distribute more than 500 grams of a mixture or substance containing a detectable

---

[1]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota, sitting by designation.

amount of methamphetamine and his sentence as a career offender. Newton argues that the district court[2] erred in denying Newton's motion to suppress evidence, when it admitted the surprise testimony of Dennis Boyer, and when it found defendant to be a career offender. We affirm.

While driving a commercial truck, Newton stopped at a weigh station in Cedar County, Iowa, for a routine commercial motor vehicle inspection. Newton's truck was selected for a level II inspection in which the driver, his paperwork, and the truck are inspected for approximately 45 minutes by the Department of Transportation of the State of Iowa. DOT officer Scott Knudtson checked Newton's logbook for compliance and noticed that an inspection was completed in Nebraska. Newton indicated that he had not been inspected in Nebraska, but that he had received citations for possessing a radar jammer and a radar detector, both illegal in commercial vehicles. Although Newton said that the radar detector was packed away, Knudtson could see the radar detector under a baseball cap on the dash.

Knudtson directed Newton to exit his truck and come to the building with paperwork to complete the inspection. When Officer Knudtson asked Newton if there was anything else illegal in the truck that he should know about, Newton returned to the truck and produced a small bag of methamphetamine. Newton's paperwork was examined and no violations were found. He was not placed under arrest at that time. When asked when he had last used methamphetamine, Newton admitted that he snorted it six hours earlier to stay awake and drive longer. Knudtson then requested consent to search the truck and Newton responded affirmatively. Newton later gave written consent to search the truck, acknowledging his earlier oral consent to search.

---

[2]The Honorable Michael J. Melloy, United States District Judge for the Northern District of Iowa.

The inspectors began the search of the cab of the truck. When Knudtson reached the sleeping compartment, Newton became particularly nervous, walking toward the driver's side door after being told to stay in front of the truck. Knudtson found hypodermic needles, a spoon with white residue, and a black metal box. Through the holes, Knudtson could see a white powder substance and cash. Because of Knudtson's training as a drug recognition expert, and because Newton had earlier given Knudtson methamphetamine, Knudtson believed that the black box contained a controlled substance. The search also produced drug notes, instructions on extracting methamphetamine from an inhaler, and a listing of police frequencies.

Newton was placed under arrest for possession of methamphetamine. Officers searched for weapons on Newton's person and found $1,199 cash. Newton was then given his Miranda warnings. A drug dog searched the interior compartment of the truck and the dog alerted to a box. The officers pried open the box and discovered approximately 230.9 grams of methamphetamine and $24,980 in cash.

## I.

Newton contends that the district court erred in denying defendant's motion to suppress. A district court's factual findings are reviewed for clear error and its conclusion as to whether the search violated the Fourth Amendment is reviewed de novo. United States v. Martinez, 78 F.3d 399, 401 (8th Cir. 1996). Newton did not object to the magistrate judge's report and recommendation finding that he consented to the search and denying his motion to suppress evidence. After a de novo review, the district court adopted the report and recommendation. "Appellant's failure to file any objections waived his right to de novo review by the district court of any portion of the report and recommendation of the magistrate judge as well as his right to appeal from the findings of fact contained therein." Griffini v. Mitchell, 31 F.3d 690, 692 (8th Cir. 1994). "[W]here the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal

are reviewed for plain error." United States v. Looking, 156 F.3d 803, 809 (8ᵗʰ Cir. 1998).

The United States argues, and the court found, that Newton consented, both orally and in writing. It is well settled that "[law enforcement] may conduct a search without a warrant and without probable cause if the suspect voluntarily consents to the search." United States v. Reinholz, 245 F.3d 765, 780 (8th Cir. 2001). Miranda warnings need not be given prior to requesting consent to search. United States v. Payne, 119 F.3d 637, 643 (8th Cir. 1997). Because it was not plain error for the district court to find that Newton consented to the search, the motion to suppress was correctly denied.

## II.

Newton claims that the district court erred in allowing the testimony of Dennis Boyer because his counsel did not learn of Boyer until the afternoon prior to trial. Newton claims that by allowing Boyer to testify, the court allowed trial by ambush. At trial, Newton objected to Boyer's testimony.

The United States contends that until preparing for trial it was unaware of Boyer, that it immediately listed him in its trial packet, and informed defense counsel that a subpoena was being served. The United States learned of Boyer from Newton's drug notes found in the truck which were included in the government's discovery file in accordance with its open file discovery policy.

During trial, the district court offered Newton the opportunity to take additional time to read the Jencks material or the summary of Boyer's testimony and additional time to prepare for cross examination. Newton declined additional time to prepare and read the summary material during a break in the trial. At the end of the government's

case in chief, the court sent the jury home to give Newton more time to prepare in light of the unexpected witness.

Whether information should be produced pursuant to the Jencks Act is to be determined by the district court, which should be upheld unless it is clearly erroneous. United States v. Grunewald, 987 F.2d 531, 535 (8th Cir. 1993). We will not "overturn a conviction for a Jencks violation in the absence of bad faith on the part of the government and prejudice to the defendant." United States v. Williams, 165 F.3d 1193, 1196 n.4 (8th Cir. 1999). Newton's drug notes referencing Boyer were included in the government's discovery file. There is no evidence of bad faith on the part of the government, nor prejudice to Newton. We, therefore, conclude that no reversible Jencks error occurred.

## III.

Newton claims the district court erred in finding him to be a career offender. We review de novo the district court's application of the United States Sentencing Guidelines. United States v. Hascall, 76 F.3d 902, 904 (8th Cir.), cert. denied, 519 U.S. 948 (1996). "The guidelines require the sentencing court to increase a defendant's criminal history category and offense level if the defendant is a career offender." United States v. Mau, 958 F.2d 234, 236 (8th Cir. 1992).

Newton argues that he is not a career offender because he does not have the requisite two felony convictions under U.S.S.G. § 4B1.1 for a crime of violence or controlled substance offense. Newton was previously convicted of involuntary manslaughter and possession of a controlled substance.

A career offender is defined in the United States Sentencing Guidelines as:

(1) [he] was at least eighteen years old at the time [he] committed the instant offense of conviction, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) [he] has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1.

The first two elements of the career offender guideline are not in dispute. Newton was at least eighteen when he committed the instant offense and the instant offense is a felony controlled substance offense.

Newton first alleges that his Nevada state-court involuntary manslaughter conviction is not a "crime of violence" under the third element of the career offender statute. U.S.S.G. § 4B1.2(a)(2) defines the term "crime of violence" to mean "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that – . . . otherwise involves conduct that presents a serious potential risk of physical injury to another." Newton's conduct, speeding and colliding with the rear end of a car, killing the other driver and an infant and injuring three passengers, clearly involves conduct that presents a serious potential risk of physical injury to another. We find that Newton's conviction for involuntary manslaughter meets the definition of "crime of violence."

Furthermore, the drafters of the Guidelines clearly indicated that manslaughter was to be considered a "crime of violence." Application note 1 to § 4B1.2 lists manslaughter as a "crime of violence" and makes no distinction between voluntary and involuntary manslaughter. We conclude that it encompasses both. See United States v. Fry, 51 F.3d 543 (5th Cir. 1995) (holding that involuntary manslaughter conviction arising from causing death of another while driving under the influence constituted crime of violence); United States v. Payton, 28 F.3d 17, 19 (4th Cir.) (holding that

previous involuntary manslaughter conviction constituted a crime of violence under the Guidelines), <u>cert. denied</u>, 513 U.S. 976, 115 S. Ct. 452, 130 L. Ed. 2d 361 (1994).

Newton also argues that his prior California conviction for transportation of a controlled substance is not a "controlled substance offense" as defined under § 4B1.2. Newton claims that although he was convicted of transportation of a controlled substance in 1993 and of possession of a controlled substance in 1996, these felonies do not trigger the § 4B1.1 enhancement because he was not convicted of possession or transportation with the intent to distribute.

Pursuant to U.S.S.G. § 4B1.2(b):

> The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

Newton's presentence investigation report contains uncontested facts indicating that Newton was attempting to sell two ounces of methamphetamine for $1,600 to use the proceeds to buy a half pound of methamphetamine for $2,800. As the district court found, the actual document issued by the state of California states that Newton was convicted of selling controlled substances. Thus, the district court's ruling that Newton's previous conviction was a "controlled substance offense" was not error.

The judgment is affirmed.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.