# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-4082

_____

United States of America,          *
                                  *

                 Appellee,        *    Appeal from the United States
                                  *    District Court for the District
    v.                         *    of North Dakota.
                                  *
Daniel Greatwalker,         *      [PUBLISHED]
                                  *
            Appellant.     *

_____

Submitted:  December 15, 2003

Filed:   January 30, 2004

_____

Before MORRIS SHEPPARD ARNOLD, HEANEY, and FAGG, Circuit Judges.

_____

PER CURIAM.

Daniel Greatwalker, a Native American, pleaded guilty to first-degree murder in Indian country in exchange for a thirty-five year sentence. See 18 U.S.C. § 1111(a), 1153. Greatwalker moved to withdraw his plea, and the district court denied his motion. Greatwalker appealed asserting he should be allowed to withdraw his plea because his sentence was less than the statutory mandatory life sentence. We agreed. United States v. Greatwalker, 285 F.3d 727, 729 (8th Cir. 2002).

On remand, Greatwalker's case went to trial. Testimony established that on the night of the killing, Greatwalker sought out the victim, Linus Wallette, because

someone named Wallette had killed Greatwalker's father. See United States v. Wallette, 580 F.2d 335 (8th Cir. 1978). Several eyewitnesses testified they saw Greatwalker fight with Wallette and brutally beat him with a knife, pickax, hammer, and shovel. Blood and other evidence supported their accounts of the events. Wallette's blood covered Greatwalker's shoes and clothes, as well as the four weapons. Greatwalker told witnesses he had finally got the guy who killed his father and asked for help burying him. Greatwalker stated Wallette was still alive, but he was going to chop off his head. Two witnesses rode with Greatwalker in a truck to a wooded area, transporting the severely injured Wallette in the rear. Greatwalker and the witnesses dumped Wallette on the ground and dragged him into the trees. Greatwalker hit Wallette with a pickax, then left with the witnesses. At Greatwalker's direction, others cleaned the truck, burned his pants, and washed his other bloody clothes. After one witness called authorities and told them he had seen a murder, authorities found Wallette's body in the woods. An autopsy revealed Wallette died from blunt force injuries to the head and neck, which were consistent with injuries that could be caused by the hammer, pickax, and shovel. Wallette had also been stabbed and cut. At the trial's conclusion, the jury convicted Greatwalker of first-degree murder and three assault charges. The district court[*] sentenced him to life in prison. Greatwalker now appeals his jury conviction, raising several issues.

First, Greatwalker claims the jury selection process improperly excluded Native Americans from the jury in violation of his Sixth Amendment right to a jury comprised of a fair cross-section of the community. Greatwalker asserts the mere fact that the jury panel included no Native Americans creates a prima facie case that the process is flawed. We disagree. To prevail on his improper exclusion claim, Greatwalker must show Native Americans are a distinctive group in the community, their representation in his venire was not fair and reasonable in relation to their

---

[*]The Honorable Patrick A. Conmy, United States District Judge for the District of North Dakota.

representation in the community, and their under-representation resulted from their systematic exclusion from the jury-selection process.  United States v. Morin, 338 F.3d 838, 843 (8th Cir. 2003).  Greatwalker was tried in the District of North Dakota, which draws its pools of prospective jurors randomly from lists of those who voted in the last presidential election.  Id.  We recently upheld the District's system, stating, "Absent proof that Native Americans, in particular, face obstacles to voter registration in presidential elections, '[e]thnic and racial disparities between the general population and jury pools do not by themselves invalidate the use of voter registration lists and cannot establish the "systematic exclusion" of allegedly under-represented groups.'"  Id. at 844.  Greatwalker has not attempted to prove Native Americans, in particular, face obstacles to registering to vote in presidential elections.  Thus, like the defendant in Morin, Greatwalker has failed to show Native Americans are systematically excluded from jury pools in the District of North Dakota.  Id.

Second, Greatwalker asserts the Government violated its open file discovery policy by failing to provide agents' handwritten notes of witness interviews, even though he was provided with typed accounts of the interviews.  According to Greatwalker, the handwritten notes were either Jencks Act material or impeachment material under Brady v. Maryland, 373 U.S. 83 (1963).  The Jencks Act provides, "[N]o statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case."  18 U.S.C. § 3500(a).  A defendant's conviction may not be overturned for noncompliance with the Jencks Act absent an indication there was bad faith on the part of the Government and prejudice to the defendant.  United States v. Newton, 259 F.3d 964, 967 (8th Cir. 2001).  Providing typewritten reports of interviews satisfied the Jencks Act unless the handwritten notes materially departed from the typewritten reports in substance or there was bad faith on the Government's part.  United States v. Grunewald, 987 F.2d 531, 535 (8th Cir. 1993).  Greatwalker does not allege the Government acted in bad

faith and has not shown the substance of the handwritten notes materially varied from the typed version. Further, Greatwalker has made no showing of prejudice. Indeed, the Government provided over 3000 pages of discovery, including the typewritten reports of the witnesses' interviews, which Greatwalker used during his cross-examination and questioning of witnesses. Greatwalker also recalled several witnesses after he had access to the handwritten notes, and used the notes when questioning them.

Greatwalker also argues the agents' handwritten notes constituted impeachment material that the Government was required to disclose under Brady. Because Greatwalker did not raise a Brady claim in the district court, we review only for plain error, and find none. To establish a Brady violation, Greatwalker must show the prosecution suppressed evidence, the evidence was favorable to the accused, and the evidence was material. United States v. Walrath, 324 F.3d 966, 969 (8th Cir. 2003). Even if a Brady violation occurred, we do not reverse a conviction if the violation was not prejudicial and amounted to harmless error. Id. In this case, any violation was harmless. Greatwalker does not claim his ability to cross-examine witnesses was so impaired he was denied due process, see United States v. Wadlington, 233 F.3d 1067, 1076-77 (8th Cir. 2000), and does not indicate how the handwritten notes were additionally exculpatory. Because the Government disclosed the handwritten notes at trial, Brady was not violated. United States v. Einfeldt, 138 F.3d 373, 377 (8th Cir. 1998) (Brady not violated when prosecution belatedly discloses evidence during trial). Indeed, Greatwalker recalled several witnesses after obtaining the handwritten notes and used them in his questioning. There is not a reasonable probability the results of the trial would have been different if the handwritten notes had been disclosed earlier. See Wadlington, 233 F.3d at 1077.

Third, Greatwalker contends the district court should have allowed into evidence the results of lie detector tests taken by witnesses at the scene of the murder. Before any expert evidence may be admitted, however, the party seeking its

admission must lay a proper foundation for the trial court to decide its reliability. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592-95 (1993). Because Greatwalker never established or argued the results were reliable under Daubert, the polygraph results were inadmissible. The district court did not abuse its discretion in excluding the results of the polygraph examinations. United States v. Jordan, 150 F.3d 895, 899 (8th Cir. 1998).

Fourth, Greatwalker contends the evidence was insufficient to convict him. Viewing the evidence in the light most favorable to the verdict and giving the verdict the benefit of all reasonable inferences, United States v. Santos-Garcia, 313 F.3d 1073, 1080 (8th Cir. 2003), we conclude there was substantial evidence that Greatwalker killed Wallette with premeditation, or at a minimum, participated in his premeditated killing.

Next, Greatwalker argues the district court should have held an evidentiary hearing to determine whether his rights under Miranda v. Arizona, 384 U.S. 436 (1966) were violated during his two postarrest interviews with law enforcement agents. At the time of Greatwalker's trial, Federal Rule of Criminal Procedure 12(b)(3) (now renumbered as Rule 12(b)(3)(c)) required any motion to suppress evidence to be raised before trial. Greatwalker made no pretrial request to suppress the statements, so he waived his right to hearing on the matter. Fed. R. Crim. P. 12(f) (2002) (renumbered as current Rule 12(e)); (United States v. Miller, 987 F.2d 1462, 1464-65 (10th Cir. 1993). Besides, any error in admitting the statements was harmless beyond a reasonable doubt because most of the statements were merely cumulative of other evidence at trial and the noncumulative statements were only remotely inculpatory. See United States v. Santos, 235 F.3d 1105, 1108 (8th Cir. 2000).

Greatwalker also contends the district court committed error in admitting photographs of Wallette. A district court may admit relevant photographs unless they

-5-

are "'so gruesome or inflammatory that [the] prejudicial impact substantially outweigh[s] [the] probative value.'" United States v. Ingle, 157 F.3d 1147, 1153 (8th Cir. 1998). The photographs were relevant in this case. The autopsy photographs were used as aids in the medical examiner's testimony to explain the nature and extent of Wallete's injuries and the cause of his death. Photographs of the autopsy and the murder scene were also used to corroborate other evidence. The district court did not abuse its discretion in concluding the photographs' probative value was not substantially outweighed by the risk of unfair prejudice. United States v. Edwards, 159 F.3d 1117, 1129 (8th Cir. 1998).

Last, Greatwalker challenges the district court's questioning of witnesses at trial. Because Greatwalker does not identify which questions were objectionable or any law supporting his claim, we consider the claim abandoned. United States v. Gonzales, 90 F.3d 1363, 1369-70 (8th Cir. 1996). Indeed, Greatwalker did not object to the questioning during trial. The record shows the district court did question witnesses during both defense and Government examination. The district court merely asked neutral questions to clarify or develop facts, simplify questions for a witness, or to understand objections. See United States v. Dreamer, 88 F.3d 655, 659 (8th Cir. 1996). The district court's questions were not one-sided against Greatwalker and did not deprive him of a fair trial. See id. Further, the district court instructed the jury that it should not assume he held any opinion on matters relating to his questions.

We thus affirm Greatwalker's conviction.

_____