# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 11-3355

———————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Troy David Chaika, | * | |
| | * | |
| Defendant - Appellant. | * | |

———————

Submitted: May 18, 2012
Filed: October 1, 2012

———————

Before LOKEN and BEAM, Circuit Judges, and PERRY,[*] District Judge.

———————

LOKEN, Circuit Judge.

When the market for luxury homes in the Twin Cities dramatically slowed, real estate agent Troy Chaika and Dustin LaFavre formed Superior Investment Group (SIG) to acquire unsold homes at discounted prices, seek out buyers and arrange mortgage loans that would finance significantly inflated purchase prices, and use the inflated mortgage loan proceeds to pay fees to SIG and a Chaika-owned company and provide cash back to the buyers. SIG did not disclose to mortgage lenders that buyers would receive significant portions of the loan proceeds. The artificially inflated

_____

[*]The Honorable Catherine D. Perry, Chief Judge of the United States District Court for the Eastern District of Missouri, sitting by designation.

prices were supported by false mortgage loan documents, including duplicate HUD forms to conceal price differentials; false appraisals; and bank statements that misrepresented buyers' incomes and net worth. After the fraudulent transactions, many buyers could not afford the inflated mortgage payments, resulting in foreclosure sales at prices well below the unpaid mortgage balances.

Chaika and LaFavre arranged more than one hundred residential property transactions involving undisclosed cash payments to buyers, despite receiving legal advice that concealing these kickbacks from mortgage lenders was fraud. The FBI and U.S. Postal Service began investigating SIG's practices in 2009. Chaika was charged with seven counts of wire fraud, two counts of mail fraud, and one count of conspiracy to commit wire fraud and mail fraud in violation of 18 U.S.C. §§ 1341, 1343, and 1349. LaFavre pleaded guilty to fraud conspiracy, agreed to cooperate, and testified against Chaika at trial. A jury convicted Chaika of all counts. He appeals the conviction, arguing the district court erred by not permitting him to impeach LaFavre with a prior conviction for a sex offense, and by permitting the government to introduce expert testimony by three witnesses. He also appeals the 102-month sentence, arguing it is substantively unreasonable, and the district court's entry of a post-sentencing Order of Restitution making Chaika and LaFavre jointly and severally liable to pay $7,430,858.30 in restitution to a partially-disclosed list of victims. We vacate the Order of Restitution and otherwise affirm.

## I.  The Federal Rule of Evidence 609(a) Issue

Prior to trial, the government filed a motion in limine to preclude Chaika from impeaching LaFavre at trial with an eight-year-old state court conviction for felony sexual misconduct and the state court's revocation of LaFavre's probation in 2008. Four months before trial, after a contested motions hearing, the district court granted the government's motion, explaining:

With respect to Mr. LaFavre, I'm going to also not let that sexual conduct conviction come in. I think that it is highly prejudicial. I think that under [Rule] 403 [of the Federal Rules of Evidence] its prejudicial effect clearly outweighs its usefulness. I think, as the Government has pointed out, you have plenty of ammunition, so to speak, to deal with Mr. LaFavre. He has pled guilty here. He has an agreement with the Government which he's going to hope by his testimony and cooperation will reduce his sentence. And clearly that can be brought to the jury's attention in some detail.

On appeal, Chaika argues the district court abused its discretion by not allowing use of this evidence for impeachment purposes.[2] He relies on Rule 609(a)(1)(A) of the Federal Rules of Evidence, which provides that evidence of a criminal conviction for a crime punishable by more than one year in prison "must be admitted, subject to rule 403 . . . in a criminal case in which the witness is not a defendant" for the purpose of "attacking [the] witness's character for truthfulness."[3] The limitation in Rule 403 permits a court to exclude such evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

---

[2]Chaika's argument includes the issue of LaFavre's probationary status. The district court's ruling did not expressly address that issue, and Chaika did not ask the court to clarify its ruling. Nor does he address on appeal how he would have used the state court's revocation of probation to impeach LaFavre without disclosing the underlying sexual misconduct conviction. Thus, the question of impeachment-by-probationary-status was not properly preserved as a separate issue.

[3]This is the current formulation of Rule 609, adopted on December 1, 2011, after Chaika's trial. The Advisory Committee's note to the 2011 amendment explained, "There is no intent to change any result in any ruling on evidence admissibility." Neither party suggests that the 2011 changes affected the Rule 609 issues raised by Chaika's appeal.

In considering whether to admit evidence of a prior conviction to impeach a witness, "[t]he weighing of probative value against prejudicial effect is committed to the sound discretion of the trial court." United States v. Foley, 683 F.2d 273, 278 (8th Cir.), cert. denied, 459 U.S. 1043 (1982). In criminal cases, decisions from other circuits have upheld exclusion of a government witness's prior conviction for sexual assault or rape if the district court conducted a proper Rule 403 analysis and concluded that impeachment with the prior sexual offense would be unfairly prejudicial, the offense had minimal relevance to the witness's honesty, and the defendant had ample other bases to challenge the witness's truthfulness. See United States v. Jackson, 549 F.3d 963, 978-79 (5th Cir. 2008), cert. denied, 130 S. Ct. 51 (2009); United States v. Begay, 144 F.3d 1336, 1338-39 (10th Cir. 1998).[4] These decisions reflect our view that Rule 403 affords a district court broad discretion to balance probative value against the danger of unfair prejudice in a particular case. See, e.g., United States v. Banks, 553 F.3d 1101, 1107 (8th Cir. 2009); United States v. Morris, 327 F.3d 760, 762 (8th Cir.), cert. denied, 540 U.S. 908 (2003); Porous Media Corp. v. Pall Corp., 173 F.3d 1109, 1117-18 (8th Cir. 1999).

Here, the district court carefully balanced probative value and the risk of unfair prejudice in exercising its Rule 403 discretion. While LaFavre was a key government witness, his prior sexual offense was unrelated to the mortgage fraud at issue and did not require proof of "a dishonest act or false statement." Rule 609(a)(2). As the district court noted in its pretrial ruling, to the extent LaFavre's truthfulness would be a trial issue, the ability to impeach him with his guilty plea, promise to cooperate, and hoped-for leniency was far more potent "ammunition." Though Chaika asserts on appeal that the refusal to allow this additional basis for impeachment "deprived defendant of his right to a fair trial," at trial he did not ask the court to revisit its

---

[4]When the witness is the criminal defendant, Rule 609(a)(1)(B) incorporates the essential Rule 403 balancing, but the inquiry is necessarily somewhat different. See United States v. Montgomery, 390 F.3d 1013, 1015-16 (7th Cir. 2004).

pretrial ruling in light of LaFavre's specific testimony. Indeed, when Chaika later testified in his own defense, he admitted participating in the fraudulent non-disclosures that LaFavre and other government witnesses had described, claiming that he did so without the requisite intent to defraud. On this record, there was no abuse of the Rule 403 discretion expressly granted the district court in Rule 609(a)(1)(A).

## II. The Government's Expert Witnesses

Prior to trial, Chaika moved to exclude the government's expert witnesses, arguing their testimony was not necessary to the jury's understanding of the case. See Fed. R. Ev. 702(a) (a qualified expert may testify if the expert's knowledge "will help the trier of fact to understand the evidence or to determine a fact in issue"). The district court ruled that it would permit expert testimony to explain the structure of the mortgage loan industry and how a mortgage fraud scheme could operate:

> I think the jurors are entitled to know how certain transactions, if they are fraudulent, how they are put together, what are the indicia; just like in a drug transaction how drug dealers deal with cash and scales and with guns and all that sort of thing, so they can then listen to the testimony and see whether part or all of it fits. But don't let that witness go over the line and say in the next question now here is what happened in this case.

At trial, the government introduced testimony by three experts, banker and mortgage loan advisor Keenan Raverty, I.R.S. Special Agent Andy Gibart, and mortgage broker and consultant Ellen Bach. Chaika argues the combined testimony was unnecessarily prejudicial because it "gave the imprint of approval to the government's theory that the real estate transactions completed by the defendant and others were fraudulent rather th[an] good faith efforts to comply with the law." The government's case was not that complex, he asserts ("a fraud is a fraud, and a lie is a lie"). The abundant expert testimony took from the jury "their duty to evaluate credibility and find facts."

We review this issue for abuse of discretion, according "substantial deference" to the district court's decision to admit expert testimony. United States v. Roach, 644 F.3d 763, 763-64 (8th Cir. 2011) (standard of review). Here, Raverty described how a typical home loan is structured based on his many years in the mortgage finance business. Testimony giving the jury an understanding of the relationships and documents common in legitimate mortgage transactions was obviously relevant to their understanding of the evidence. Special Agent Gibart, part of a multi-agency Mortgage Fraud Task Force, then testified how fraud can be perpetuated within that lending structure. "It is well within the discretion of a district court to allow law enforcement officials to testify as experts concerning the modus operandi of [criminals] in areas concerning activities which are not something with which most jurors are familiar." United States v. Brenton, 168 Fed.Appx. 747, 749 (8th Cir.), cert. denied, 549 U.S. 934 (2006), quoting United States v. Solorio-Tafolla, 324 F.3d 964, 966 (8th Cir. 2003); see United States v. Liner, 435 F.3d 920, 924 (8th Cir. 2006) (expert testimony regarding "fraudulent high-yield investment schemes"). Mortgage consultant Bach, owner of a brokerage business that financed four transactions presented to the jury, testified as an expert regarding the financing end of mortgage transactions.

The district court's pretrial ruling placed limits on the government's use of expert testimony. Chaika did not object at trial that the government's expert testimony exceeded those limits. There was no abuse of the court's substantial discretion to permit expert testimony.

### III. Chaika's Prison Sentence

The district court calculated an advisory guidelines range of 210-262 months and sentenced Chaika to 102 months in prison, acknowledging this was significantly higher than LaFavre's 48-month sentence. On appeal, Chaika first "maintains his

objections" to five guidelines enhancements, without arguing those issues. We reject this improper manner of preserving claims of procedural sentencing error.

Chaika next argues that his 102-month sentence is substantively unreasonable because (i) there is unreasonable disparity when compared to the 48-month sentence imposed on LaFavre, a more culpable conspirator with a worse criminal history; and (ii) the district court failed to give adequate weight to Chaika's good character, family responsibilities, and remorse. At sentencing, the court explained that LaFavre was "in a totally different situation" because his cooperation "helped the Government substantially in proving its case against Mr. Chaika." A defendant's cooperation with the government is a legitimate basis for sentencing disparity. See United States v. Gallegos, 480 F.3d 856, 859 (8th Cir. 2007). The court expressly considered Chaika's character, noting letters received from his family and the low risk of a future offense. A sentencing court has "wide latitude to weigh the § 3553(a) factors . . . and assign some factors greater weight than others in determining an appropriate sentence." United States v. Bridges, 569 F.3d 374, 379 (8th Cir. 2009). The court imposed a sentence well below the bottom of the advisory guidelines range. In such cases, "it is nearly inconceivable that the court abused its discretion in not varying downward still further." United States v. McKanry, 628 F.3d 1010, 1022 (8th Cir.) (quotations omitted), cert. denied, 131 S. Ct. 1837 (2011). The district court did not abuse its discretion by imposing a substantively unreasonable sentence.

## IV. The Order of Restitution

The Mandatory Victims Restitution Act provides that a district court "shall order" a defendant convicted of mail fraud or wire fraud to "make restitution to the victim of the offense," defining "victim" to include "any person directly harmed by the defendant's criminal conduct in the course of the scheme [or] conspiracy" to defraud. 18 U.S.C. § 3663A(a)(1)-(2). The government bears the burden of proving an award of restitution by a preponderance of the evidence. See 18 U.S.C. § 3664(e);

United States v. Jefferson, 652 F.3d 927, 932 (8th Cir. 2011), cert. denied, 132 S. Ct. 1068 (2012).

Chaika's Presentence Investigation Report (PSR) recited that "approximaely 100 separate victims have been identified," listed eight victims who had submitted claims for restitution totaling $6,077,795.30, and declined to make a restitution recommendation, noting the court's authority to set a date for the final determination of victim losses within ninety days after sentencing when those losses are not ascertainable at least ten days prior to sentencing. See 18 U.S.C. § 3664(d)(5). Accordingly, neither party's sentencing position paper addressed the issue of restitution. At the end of the sentencing hearing and in its subsequent sentencing order, the district court instructed that restitution would be "deferred 90 days." Six weeks later, without prior notice and without scheduling a hearing or inviting written comments or objections by the parties, the court entered an Order of Restitution directing that Chaika and LaFavre are jointly and severally liable for $7,430,858.30. The four-line Order concluded, "A list of victims and their specific losses will be filed under seal with the Clerk." We have not been provided that list.

After Chaika filed his brief on appeal, the government moved to remand because, "There is a $1,353,063.00 difference between the unobjected-to restitution requests outlined in paragraph 13 of the PSR and the amount contained in the Order of Restitution." We denied that motion. The government then filed its appeal brief, "confessing error" as to $1,353,063 and urging that we affirm the remainder of the Order of Restitution because it was supported by the evidence at trial and Chaika did not object to paragraph 13 of the PSR that listed $6,077,795.30 of loss claims submitted by restitution victims. For the following reasons, we reject this contention and remand for further restitution proceedings in accordance with this opinion.

First, our review of the Order of Restitution is not for plain error. The PSR did not recommend the award of any restitution; it simply recited the claims that had been

submitted and suggested the district court defer restitution issues at sentencing. Thus, Chaika did not need to "object" to that recitation to preserve restitution issues. United States v. May, 413 F.3d 841, 848-49 (8th Cir.), cert. denied, 546 U.S. 1024 (2005), first cited by the government at oral argument, is obviously distinguishable because in that case the PSR recommended a specific award of restitution to which the defendant did not timely object. Here, at sentencing, the district court declined to consider restitution, explaining that "we'll have to take it up when those figures are put together." The court then entered the Order of Restitution without further notice, declaring a total restitution amount without disclosing the specific victim claims being awarded. Chaika was given no opportunity to object. All restitution issues are preserved for our full review.

Second, although the district court properly deferred restitution issues for ninety days pursuant to § 3664(d)(5), it committed reversible error by entering a final Order of Restitution without affording Chaika an opportunity to object to restitution claims being awarded. See 18 U.S.C. §§ 3664(a), (b), (d)(5), and (e); United States v. Vandeberg, 201 F.3d 805, 813-14 (6th Cir. 2000). In response to a question at oral argument, counsel for Chaika asserted, and government counsel did not deny, that after the sentencing hearing Chaika was not provided a complete list of restitution claimants nor whatever documents the government received supporting their claims. Thus, the record on appeal raises an inference that the government improperly provided the district court with a list of restitution victims and claims *ex parte*.

Third, the government argues on appeal that the Order of Restitution may be affirmed because the PSR recommended a greater amount of fraud loss for sentencing purposes, $13,089,568.62; the district court adopted that amount in determining Chaika's advisory guidelines sentencing range; and he did not appeal that determination. This contention reflects a lack of understanding of restitution precedents. Restitution is compensatory, not punitive. In a fraud case, it is limited to the actual loss "*directly caused* by the defendant's criminal conduct in the course

of the scheme alleged in the indictment." United States v. Gregoire, 638 F.3d 962, 973 n.3 (8th Cir. 2011) (emphasis added), quoting 18 U.S.C. § 3663A(a)(2). Here, the PSR estimated fraud loss "by taking the first and second mortgage [balances] and subtracting the foreclosure sale price." Par. 21. In a mortgage fraud case, this may be an appropriate way to estimate loss for sentencing purposes. See United States v. Parish, 565 F.3d 528, 535 (8th Cir. 2009). But "it does not provide a sufficient basis to establish the actual loss suffered by" victims of the fraud. United States v. Yeung, 672 F.3d 594, 604 (9th Cir. 2012); see United States v. Gossi, 608 F.3d 574, 581-82 (9th Cir. 2010); United States v. James, 592 F.3d 1109, 1112 (10th Cir. 2010).

Fourth, paragraph 13 of the PSR simply recited that eight restitution claims totaling $6,077,795.30 had been submitted. This was obviously no basis on which to award restitution in those amounts to the purported victims without notice and a hearing or reasonable opportunity to object. Moreover, the eight claimants included a claim by Bank of America in the amount of $4,762,370. We have searched summary trial exhibits 151 and 160, cited by the government as "fully detail[ing] the loss amounts in this case," and find no reference to Bank of America whatsoever. Perhaps its affiliates are among the lenders listed, but it is not our task to figure that out. Moreover, this absence and the trial evidence suggest that many fraudulently-induced mortgages were sold by the initial lender in a secondary mortgage market. If so, this greatly alters the determination of the victims' actual loss. The ultimate foreclosure sale price is irrelevant to an initial lender who sold the loan, while the purchasing secondary lender may not be a victim, and if it is, actual loss will turn on its purchase price in the secondary market, whether it remained on the loan all the way to foreclosure, and perhaps other factors. See Yeung, 672 F.3d at 603-05; James, 592 F.3d at 1115; see also McAdams v. McCord, 584 F.3d 1111, 1115 (8th Cir. 2009); United States v. Walker, 896 F.2d 295, 305-06 (8th Cir. 1990) (reversing restitution awards because evidence of a causal connection between the fraudulent conspiracy and victim losses was "speculative at best"). Thus, as in United States v. Innarelli, 524 F.3d 286, 293-94 (1st Cir.), cert. denied, 555 U.S. 879 (2008), the

record on appeal does not permit us to determine whether any restitution award was adequately supported.

Fifth, it appears that some restitution claims granted by the district court were submitted by buyers recruited by SIG for the fraudulent loan transactions. These awards ignored two relevant principles: first, that awarding restitutionary payments to perpetrators of the offense of conviction is "fundamental" error, United States v. Reifler, 446 F.3d 65, 127 (2d Cir. 2005); and second, that buyers who purchased at inflated prices with knowledge of kickback non-disclosures were not MVRA victims if their losses were caused by factors other than the underlying lender fraud. Compare United States v. Archer, 671 F.3d 149, 171-73 (2d Cir. 2011), with United States v. Ojeikere, 545 F.3d 220, 222-23 (2d Cir. 2008). Moreover, even if a buyer who received an undisclosed payment from the loan proceeds can establish that he or she was an innocent victim of the fraud, the amount of the kickback received must be taken into account in determining that victim's actual loss. The inadequate record on appeal suggests this was not done, for example, in calculating the award to "victim" Vallantine Atem who was listed in paragraph 13 of the PSR.

For the foregoing reasons, the judgment of the district court is reversed insofar as it includes a final order of restitution, and the case is remanded for further restitution proceedings not inconsistent with this opinion. In all other respects, the judgment is affirmed. We note that on remand the court may decline to award restitution to any victim if it determines that "the burden on the sentencing process" outweighs "the need to provide restitution" because there are "complex issues of fact related to the cause or amount of the victim's losses." 18 U.S.C. § 3663A(c)(3)(B). See also United States v. Martinez, -- F.3d --, No. 11-3547, 2012 WL 3763622, at *4 (8th Cir. Aug. 31, 2012).

———————————————