# United States Court of Appeals
### For the Eighth Circuit

_____

No. 15-2844

_____

United States of America

*Plaintiff - Appellee*

v.

Ruben Galvin Garcia, also known as Ruben Galvan Garcia

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of North Dakota - Bismarck

_____

Submitted: October 19, 2016
Filed: December 30, 2016
[Unpublished]

_____

Before RILEY, Chief Judge, WOLLMAN and BENTON, Circuit Judges.

_____

PER CURIAM.

A jury convicted Ruben Galvin Garcia of one count of aiding and abetting conspiracy to possess with intent to distribute and to distribute a controlled substance, in violation of 21 U.S.C. §§ 846 and 841(a)(1), and one count of distribution of a controlled substance, in violation of 21 U.S.C. § 841(a)(1). Garcia appeals, arguing

that the district court[1] should have allowed him to examine the list of potential jurors and that the venire did not represent a fair cross section of the community. We affirm.

Garcia's trial was held in Bismarck, North Dakota, then in the Southwestern Division of the District of North Dakota. After the panel of potential jurors was sworn and before trial began, Garcia's counsel argued that the venire did not represent a fair cross section of the community. Specifically, he argued:

> [W]e should have on this potential jury panel at least three Native Americans and with our two Indian reservations in this district[,] there are none. With this lack of minority [representation, it] concerns me that the clerk's office has not drawn a fair cross section of the community for the jury panel . . . .

The district court called as a witness the jury administrator for the United States District Court in North Dakota. The administrator explained in detail the District's jury plan and testified that the pool of prospective jurors is randomly drawn from a list of individuals who voted in the last presidential election. When asked whether "we usually see at least one or two Native Americans on the potential jury panel," the administrator replied, "I would say not." The district court overruled Garcia's objection and determined that the District's "jury plan is racially neutral on its face." It concluded that "this panel has been selected in a manner consistent with our plan [and] that there is no systematic exclusion of anyone based on race or other improper consideration."

Garcia first argues that he should have been allowed to inspect the list of potential jurors. A provision in the Jury Selection and Service Act, 28 U.S.C.

---

[1]The Honorable Ralph R. Erickson, then Chief Judge, United States District Court for the District of North Dakota.

§ 1862(f), gives defendants "essentially an *unqualified* right to inspect jury lists." Test v. United States, 420 U.S. 28, 30 (1975) (per curiam). "To avail himself [or herself] of [the] right of access to otherwise unpublic jury selection records, a litigant need only allege that he [or she] is preparing a motion challenging the jury selection procedures." United States v. Stanko, 528 F.3d 581, 587 (8th Cir. 2008) (quoting United States v. Alden, 776 F.2d 771, 773 (8th Cir. 1985)) (alteration in Alden). Garcia did not ask to inspect the list of potential jurors, nor did he allege that he was preparing a motion to challenge the jury selection procedures or otherwise indicate to the district court that he sought the jury list. Garcia thus failed to avail himself of the right to inspect the jury selection records, and the district court did not err in failing to order *sua sponte* that those records be made available.

Garcia argues that the jury panel did not represent a fair cross section of the community. He claims that the jury selection process improperly excluded Native Americans from the venire, in violation of his Sixth Amendment rights. To prevail on this claim, Garcia must prove: "(1) Native Americans are a distinctive group in the community; (2) their representation in his venire was not fair and reasonable in relation to their representation in the community; and (3) their under-representation resulted from their systematic exclusion from the jury-selection process." United States v. Morin, 338 F.3d 838, 843 (8th Cir. 2003). Even assuming that Garcia has established the first two elements, he cannot show that Native Americans are systematically excluded from the jury selection process in the District of North Dakota. We have previously upheld North Dakota's jury selection plan, which, as mentioned above, draws its pools of prospective jurors randomly from lists of persons who voted in the last presidential election. See United States v. Greatwalker, 356 F.3d 908, 911 (8th Cir. 2004) (per curiam); Morin, 338 F.3d at 843-44. We have said that "[a]bsent proof that Native Americans, in particular, face obstacles to voter registration in presidential elections, ethnic and racial disparities between the general population and jury pools do not by themselves invalidate the use of voter registration lists and cannot establish the systematic exclusion of allegedly under-represented

groups." Greatwalker, 356 F.3d at 911 (quoting Morin, 338 F.3d at 844). Garcia has not attempted to establish that Native Americans faced obstacles to registering to vote in the presidential election, and he thus has failed to show that Native Americans were systematically excluded from the jury selection process.

Garcia also argues that the composition of the jury violated his constitutional right to equal protection. "In order to make out a prima facie case of an equal protection violation in the composition of a jury, a defendant must show that an identifiable, distinct class has been substantially under-represented in the source from which jurors have been drawn over a significant period of time." United States v. Horne, 4 F.3d 579, 588 (8th Cir. 1993) (citing Castaneda v. Partida, 430 U.S. 482, 494 (1977)). Garcia argues that the jury administrator's testimony that there were not usually "at least one or two Native Americans on the potential jury panel" establishes a systematic exclusion of Native Americans from venires. That testimony alone, however, does not constitute a prima facie showing that Native Americans have been substantially under-represented from the venires over a significant period of time. Garcia has not presented evidence showing the number of Native Americans who live in the Southwestern Division of the District of North Dakota or the number of Native Americans who have served in its venires over time. He likewise has not shown a difference between the percentage of Native Americans in the Division's population and the percentage of Native Americans in the Division's venire. Accordingly, his equal protection claim must fail. Compare Castaneda, 430 U.S. at 495 (holding that the respondent's showing "that the population of the county was 79.1% Mexican-American, but that, over an 11-year period, only 39% of the persons summoned for grand jury service were Mexican-American" established a prima facie case of discrimination against Mexican-Americans in the county's grand jury selection process), with Horne, 4 F.3d at 588 (holding that a showing that the division's venire during a two-month period was 1.4% African-American and that the division's population was 2.9% African-American presented too slight a statistical deviation to

establish a prima facie case of discrimination against African-Americans in the division's venire).

The judgment is affirmed.

_____