# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-2332
_____

United States of America

*Plaintiff - Appellee*

v.

Julian Felix-Aguirre

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City
_____

Submitted: April 13, 2020
Filed: August 21, 2020
[Unpublished]
_____

Before KELLY, WOLLMAN, and STRAS, Circuit Judges.
_____

PER CURIAM.

Julian Felix-Aguirre pleaded guilty to conspiracy to distribute one kilogram or more of heroin and 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846; conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(I), (a)(1)(B)(i)-(ii), and (h); and possession of

a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i). He was sentenced to 235 months' imprisonment on the drug trafficking and money laundering counts, to be followed by a consecutive sentence of 60 months' imprisonment on the firearm count. Felix-Aguirre argues that the district court[1] erred in calculating his offense level under the U.S. Sentencing Guidelines (Guidelines or U.S.S.G.) and in imposing a substantively unreasonable sentence. We affirm.

Felix-Aguirre, a citizen of Mexico, illegally entered the United States in April 2016. According to an informant, the Mexico-based Sinaloa Cartel placed Felix-Aguirre in Kansas City, Missouri, where it had been distributing heroin and other drugs for years. The informant explained that Felix-Aguirre was being trained to take over the role held by Nestor Felix-Navarrete, who was described as a "boss" within the cartel. From the time he arrived until he was arrested in September 2016, Felix-Aguirre assisted in the distribution of large amounts of heroin and methamphetamine.

The district court grouped the drug trafficking and money laundering counts together when calculating Felix-Aguirre's sentencing range. See U.S.S.G. § 3D1.2(c) (requiring grouping "[w]hen one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts"); U.S.S.G. § 2S1.1 cmt. n.6 (requiring grouping under § 3D1.2(c) when defendant "is convicted of a count of laundering funds and a count for the underlying offense from which the laundered funds were derived"); see also U.S.S.G. § 2S1.1(a)(1) (applying the "offense level for the underlying offense from which the laundered funds were derived, if (A) the defendant committed the underlying offense . . . ; and (B) the offense level can be determined"). The district court increased the offense level by three for Felix-Aguirre's aggravating role in the offense, see U.S.S.G. § 3B1.1(b), and by two for the importation of

---

[1]The Honorable Gary A. Fenner, U.S. District Judge for the Western District of Missouri.

methamphetamine, see U.S.S.G. § 2D1.1(b)(5). With a total offense level of 38 and a criminal history category of I, his sentencing range for the drug trafficking and money laundering offenses was 235 to 293 months' imprisonment.

Felix-Aguirre first argues that the district court clearly erred in finding that he had acted as a manager or supervisor in the money laundering conspiracy. See United States v. Alcalde, 818 F.3d 791, 794 (8th Cir. 2016) (standard of review); U.S.S.G. § 2S1.1 cmt. n.2(C) (role adjustments determined "based on the offense covered by this guideline (*i.e.*, the laundering of criminally derived funds) and not on the underlying offense from which the laundered funds were derived"). Guidelines § 3B1.1(b) instructs the district court to increase an offense level by three "[i]f the defendant was a manager or supervisor . . . and the criminal activity involved five or more participants or was otherwise extensive." To qualify for the increase, the defendant must have been the manager or supervisor "of one or more other participants." U.S.S.G. § 3B1.1 cmt. n.2.

Felix-Aguirre claims that he was merely a drug runner who had not yet stepped into the role of managing or supervising any other participants. According to the presentence report, however, Felix-Aguirre asked Rafael Meza to put his name on the utilities for a residence on Garfield Avenue in Kansas City, Kansas. Meza agreed, and Felix-Aguirre paid him for setting up the utilities for the Garfield Avenue residence and for residences on Spruce and Lister Avenues in Kansas City, Missouri. The cartel stored drugs and firearms at the Garfield Avenue residence until June 2016, when Felix-Aguirre and another cartel member moved them to the Spruce Avenue residence. Felix-Aguirre lived in the Lister Avenue residence, where officers found money-transfer receipts and $56,055 in United States currency, as well as firearms, ammunition, drug ledgers, and significant amounts of heroin and methamphetamine. In light of the fact that he had called upon Meza to help set up utilities for residences that were then used by the cartel for their drug distribution and money laundering operations, we conclude that the district court did not clearly err in finding that Felix-Aguirre managed or supervised at least one other participant in

-3-

the money laundering conspiracy. See United States v. Irlmeier, 750 F.3d 759, 764 (8th Cir. 2014) (defendant may be subject to the § 3B1.1(b) enhancement if he managed or supervised only one participant in a single transaction).

Felix-Aguirre next argues that the district court erred in imposing the importation enhancement. As relevant here, Guidelines § 2D1.1(b)(5) instructs the district court to increase an offense level by two if "the offense involved the importation of amphetamine or methamphetamine or the manufacture of amphetamine or methamphetamine from listed chemicals that the defendant knew were imported unlawfully." Felix-Aguirre claims that the government failed to prove that he knew that the methamphetamine was imported. Having been sent from Mexico to manage the Kansas City drug distribution operation for a Mexico-based cartel, he had frequent interactions with high-ranking members of the cartel. He delivered methamphetamine to dealers and transferred money to people outside the United States. More than two kilograms of methamphetamine were found in his residence, and he concedes that the methamphetamine he distributed came from Mexico. Assuming that the Guidelines require proof that Felix-Aguirre knew that the methamphetamine was imported, the record sets forth facts sufficient to support such a finding. See United States v. Rivera-Mendoza, 682 F.3d 730, 734 (8th Cir. 2012) (declining to reach the question whether § 2D1.1(b)(5)'s knowledge requirement applies to "the importation of amphetamine or methamphetamine" because sufficient evidence supported the finding that the defendant knew of the importation); cf. United States v. Serfass, 684 F.3d 548, 551 (5th Cir. 2012) ("conclud[ing] that the plain language of § 2D1.1(b)(5) unambiguously limits the qualification, 'that the defendant knew were imported unlawfully,' to such contraband that was manufactured from one or more of the listed chemicals; it does not apply to 'the importation of amphetamine or methamphetamine,' i.e., the end products of such manufacturing").

We find no abuse of discretion in the district court's determination that Felix-Aguirre's age, lack of criminal history, acceptance of responsibility, and good

behavior in prison did not warrant a downward variance from the advisory Guidelines sentencing range.  See United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc) (standard of review); see also United States v. King, 898 F.3d 797, 810 (8th Cir. 2018) ("The district court's decision not to weigh mitigating factors as heavily as [the defendant] would have preferred does not justify reversal." (internal quotation marks and citation omitted)).  We also conclude that the district court adequately considered the 18 U.S.C. § 3553(a) sentencing factors.  See United States v. Duke, 932 F.3d 1056, 1061 (8th Cir. 2019) ("[A] district court need not expressly address every § 3553(a) factor if the record shows that they were considered.").  To the extent that he has raised the issue, we reject Felix-Aguirre's contention that there is an unwarranted disparity between his sentence and his coconspirator Dennis McLallen's 180-month sentence.  Unlike Felix-Aguirre, McLallen cooperated with the government and provided useful information in a timely manner.  See United States v. Chaika, 695 F.3d 741, 746 (8th Cir. 2012) ("A defendant's cooperation with the government is a legitimate basis for sentencing disparity.").  Moreover, the district court could have found Felix-Aguirre more culpable, and thus deserving of a longer sentence, because he supplied drugs that McLallen thereafter distributed. The sentence also is not substantively unreasonable.

The judgment is affirmed.

_____