# United States Court of Appeals
### For the Eighth Circuit

_____

No. 22-1299

_____

United States of America

*Plaintiff - Appellee*

v.

Gary D. Primm, Jr.

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: December 15, 2022
Filed: March 29, 2023

_____

Before SMITH, Chief Judge, GRUENDER and STRAS, Circuit Judges.

_____

SMITH, Chief Judge.

Gary Primm was found guilty by a jury on a three-count indictment charging him with failure to file a tax return, in violation of 26 U.S.C. § 7203, and tax evasion for personal returns in 2014 and 2015, in violation of 26 U.S.C. § 7201. After considering and denying Primm's post-trial motions for a new trial and acquittal, the

district court[1] sentenced Primm to 36 months' imprisonment and ordered him to pay over $350,000 in restitution. Primm appeals, arguing that the district court abused its discretion when it (1) allowed for the expert testimony of Special Agent (SA) Nicholas Kenney, (2) denied Primm's motions for a new trial and acquittal, and (3) ruled for the government on a Jencks Act issue. We affirm.

## I. *Background*

Primm ran a marketing company called United Auto Defense, LLC (UAD) that sold third-party automobile warranties. UAD filed a Form 1120 corporate tax return for 2012 to be taxed as a C corporation. UAD failed to file in both 2014 and 2015. Primm also failed to file personal tax returns for the years between 2012 and 2017 despite receiving W-2 wages from UAD.

In 2014, Primm approached Clayton Logomasini about the potential for loaning money from UAD to Logomasini's company, Highland Management (Highland). UAD sent $360,000 to Highland, who in turn sent $180,000 to International Megalodons (IM), an offshore business that was owned entirely by Primm. Primm hired Stacey Brown as an accountant for UAD, who encouraged him to work with a certified public accounting firm to help file personal and business tax returns. Brown continuously attempted to seek out additional information to work on UAD's books, but Primm failed to provide her with the documents that she needed. Primm failed to file tax returns on $386,621 of income in 2014 and $650,357 in 2015. These failures resulted in a three-count grand jury indictment charging him with failure to file a tax return, in violation of 26 U.S.C. § 7203, and tax evasion for personal returns in 2014 and 2015, in violation of 26 U.S.C. § 7201.

---

[1]The Honorable Stephen R. Clark, then United States District Judge for the Eastern District of Missouri, now Chief Judge.

In 2021, Primm's case proceeded to trial. The government presented several witnesses, including an expert witness, SA Kenney, who testified to common types of tax evasion. His testimony was accompanied by a self-made slide that featured six different methods of tax evasion that he had encountered in his work as an Internal Revenue Service special agent. Prior to this testimony, the government turned over all materials required under the Jencks Act, 18 U.S.C. § 3500. The Jencks Act provides that any statements made by a government witness that are in possession of the government must be delivered to a criminal defendant. *Id.* The defense requested additional materials related to SA Kenney's other investigations, believing them to be under the purview of the Jencks Act. After hearing argument about the scope of the Jencks Act, the district court denied Primm's request for additional materials, concluding that the Act did not require their disclosure.

Logomasini also testified for the government. He spoke about his relationship with Primm and the transactions between UAD, Highland, and IM. The night after Logomasini's testimony, the government disclosed to the defense that he had been convicted in 2013 in Missouri for driving under the influence (DUI), resulting in five-years' probation and a three-year suspended sentence. The government attempted to remedy the late disclosure of potential impeachment evidence by offering to make Logomasini available for additional testimony or by entering a stipulation. The defense declined to seek additional testimony from Logomasini on the issue but did request a jury instruction in line with one given in *United States v. Garrison*, 888 F.3d 1057, 1063 n.3 (9th Cir. 2018). The district court considered options, then accepted the defense's compromise, which was to ask SA Kenney about the conviction during his cross-examination. However, during SA Kenney's testimony, the defense asked no questions related to Logomasini's DUI.

After the close of evidence and argument, the jury found Primm guilty on all three counts of the indictment. After the verdict, Primm moved the court for judgment of acquittal or a new trial based on the sufficiency of the evidence on the issue of

willfulness. The district court denied the motion and sentenced Primm to 36 months' imprisonment and ordered restitution. This appeal followed.

## II. *Discussion*

Primm appeals his conviction, arguing that the district court erred in (1) allowing SA Kenney's expert testimony; (2) failing to order Jencks Act disclosures; (3) denying the motion for judgment of acquittal or a new trial based on violations of *Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972); and the Jencks Act; and (4) denying the same on the basis of insufficiency of the evidence. We address each of these arguments in turn.

### A. *Admissibility of Expert Testimony*

We review the decision of the district court to admit expert testimony for an abuse of discretion, giving substantial deference to the district court. *United States v. Chaika*, 695 F.3d 741, 746 (8th Cir. 2012). Primm argues that the district court abused its discretion by effectively allowing SA Kenney to testify to Primm's mental state in violation of Federal Rule of Evidence 704(b). Under Rule 704(b), "[i]n a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone." "Testimony that, when combined with other evidence, might imply or otherwise cause a jury to infer this ultimate conclusion, however, is permitted under the rule." *United States v. Vesey*, 338 F.3d 913, 916 (8th Cir. 2003).

Primm avers that SA Kenney cherry-picked several examples of tax evasion that were close to the facts of Primm's offense conduct. Rather than adopt examples from an IRS publication, SA Kenney pulled them from his experience in other investigations and testified generally about common methods of tax evasion. Primm argues that the examples only constituted tax evasion when done willfully; for example, "excessive use of cash," R. Doc. 132, at 198, is only a method of tax

evasion if done willfully. Thus, by testifying that excessive cash usage is a common method of tax evasion, SA Kenney was effectively testifying that Primm's use of cash was willful, an essential element of the crime.

We have previously permitted similar expert testimony. *Chaika* involved expert testimony on fraud within mortgage lending structures. 695 F.3d at 741. There, we upheld the district court's decision to allow the testimony because, "[i]t is well within the discretion of a district court to allow law enforcement officials to testify as experts concerning the modus operandi of criminals in areas concerning activities which are not something with which most jurors are familiar." *Id.* at 746 (cleaned up). *Vesey* is also instructive. In that case, we determined that an expert's implication that the defendant's use of a scale was tied to drug distribution was admissible. 338 F.3d at 916. This was because "he did not directly address [the defendant's] intention to distribute the drugs." *Id*. The government may permissibly put on a witness that "might imply or otherwise cause a jury to infer" a particular mental state, so long as it does not invade the province of the jury. *Id*.

Here, SA Kenney did not directly testify to Primm's mental state but rather to the modus operandi of tax evasion criminals. Therefore, the district court did not abuse its discretion by admitting SA Kenney's expert testimony.

## B. *Jencks Act Disclosures*

The Jencks Act requires the government to produce to the defense any "statement" of a witness that relates to the subject matter of the witness's testimony. 18 U.S.C.A. § 3500(b). A "statement" is defined as:

> (1) a written statement made by said witness and signed or otherwise adopted or approved by him;

> (2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral

statement made by said witness and recorded contemporaneously with the making of such oral statement; or

(3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.

*Id*. § 3500(e). The statement must be in the possession of the United States. *Id*. § 3500(b). Additionally, if there are statements produced that contain both material that is related to the subject matter of the testimony and material that is not, the court is required to review the statements in camera and redact the unrelated portions. *Id*. § 3500(c).

We review a district court's holding about a potential Jencks Act violation for clear error. *United States v. Newton*, 259 F.3d 964, 967 (8th Cir. 2001). At trial, Primm requested, in addition to the statements made by SA Kenney in the course of the investigation, all statements made by SA Kenney while investigating tax evasion cases. This would include much of his work history with other investigations. Primm argued that because SA Kenney testified as an expert witness as well as a fact witness, the Jencks Act required disclosure of statements that relate to other tax evasion investigations. The district court, upon due consideration, denied Primm's request.

We decline to extend the Jencks Act as Primm suggests. Our prior precedent cautions against such an extension. We have held that the government need not turn over collateral or background information. *United States v. Byrne*, 83 F.3d 984, 990–91 (8th Cir. 1996). We have also held that there is no need to produce statements made by the witness that are not related to the testimony at trial. *Rizzo v. United States*, 295 F.2d 638, 640–41 (8th Cir. 1961). Primm sought materials unrelated to SA Kenney's testimony about common forms of tax evasion. Had Kenney testified about specific cases that he had worked on in the past, these statements may have been related. But the general testimony given by SA Kenney describing common types of

tax evasion does not trigger Jencks Act disclosure of all statements from prior investigations related generally to tax evasion. Accordingly, we hold that the district court did not clearly err by denying Primm's request for additional materials from the government.

## C. *Judgment of Acquittal or New Trial*

Primm also argues that the district court abused its discretion when it denied his motion for judgment of acquittal or a new trial. He bases this argument on alleged violations of *Brady*, *Giglio*, and the Jencks Act. More specifically, Primm alleges that the government's failure to disclose Logomasini's 2013 DUI conviction to the defense prior to his testimony was a *Giglio* violation. He further alleges that the failure to produce the Highland tax returns was a *Brady*, *Giglio*, and Jencks Act violation. We address these arguments in turn.

First, "[w]e review a district court's denial of a motion for new trial after a court trial for an abuse of discretion." *Lopez v. United States*, 790 F.3d 867, 871 (8th Cir. 2015). Under *Giglio*, the government must disclose all material evidence that affects credibility. 405 U.S. at 154. This type of "information is deemed material so as to justify a retrial only if there is a reasonable probability that, had it been disclosed to the defense, the result of the proceeding would have been different." *United States v. Garcia*, 562 F.3d 947, 953 (8th Cir. 2009) (cleaned up). *Giglio* is a corollary to *Brady*, which requires the government to disclose any evidence favorable to the defendant and that is "material either to guilt or to punishment." 373 U.S. at 87.

The government disclosed Logomansini's DUI conviction the evening after his testimony. The government, district court, and the defense explored a variety of options for remedying the undisclosed conviction, including virtual testimony, a stipulation, and bringing Logomansini back for cross-examination. Had the defense decided to recall Logomansini and cross-examine him about the DUI, there would likely not have been a *Brady* or *Giglio* violation, unless the belatedness of the

-7-

disclosure would have somehow affected the outcome of trial. *See United States v. Greatwalker*, 356 F.3d 908, 912 (8th Cir. 2004) (per curiam). The district court offered Primm this option. Primm elected not to cross-examine Logomansini about the DUI nor ask SA Kenney about it. *Giglio*'s disclosure requirement was satisfied. *See Giglio*, 405 U.S. at 154.

Second, the Highland tax returns were not material, and thus, do not give rise to a *Brady* or *Giglio* violation. As stated previously, material evidence is that which would have a reasonable probability to change the result of the proceedings. *Garcia*, 562 F.3d at 953. SA Kenney testified that he saw the Highland tax returns, but Revenue Agent (RA) David Comiskey testified that he was able to perform the tax computations without considering the Highland tax returns. Even without seeing these returns, RA Comiskey determined that a taxable event had occurred, even without the $180,000 from Highland to IM. Because the tax returns did not create a reasonable probability of a different result, they are not material and not subject to *Brady* or *Giglio* disclosure.

Lastly, the question of whether the tax returns may qualify as "statements" under the Jencks Act is a novel one for this circuit. Both the Fifth and Tenth Circuits have considered this issue and found that the tax returns of government witnesses are not "statements" for Jencks Act purposes. *See United States v. Carrillo*, 561 F.2d 1125, 1128 (5th Cir. 1977) ("Unless the tax returns were substantial verbatim recitals they were not clearly statements within the meaning of the Jencks Act." (footnote omitted)); *United States v. Page*, 808 F.2d 723, 730 (10th Cir. 1987) ("But other materials, such as tax returns, are clearly not statements discoverable under the Jencks Act."). The text of the Jencks Act states that, "[t]he term 'statement'. . . means . . . a written statement made by said witness and signed or otherwise adopted or approved by him." 18 U.S.C. § 3500(e)(1). While a tax return is verified by an individual's signature, it is not a "written statement" by that individual and thus not Jencks Act material under § 3500(e)(1). Tax returns also fail to qualify as Jencks Act material

under subsequent Jencks Act sections that cover recordings of oral statements or statements made to grand juries. A tax return cannot be "recorded," *id.* § 3500(e)(2), or turned into an "oral statement," *id.* § 3500(e)(3), in a meaningful way. For these reasons, we join the Fifth and Tenth Circuits in holding that tax returns are not "statements" under the Jencks Act. The government was not obligated to produce them to Primm.

## D. *Sufficiency of the Evidence*

Lastly, Primm argues that the district court erred by denying his motion for judgment of acquittal based on insufficient evidence. He contends that the evidence did not establish that UAD was a C corporation for federal tax purposes. The government premised much of its tax loss calculations on C corporation status. While the corporate structure of UAD was not a necessary component of the charges in the indictment, the government did need to establish that "the defendant owed substantial income tax" under Count I of the indictment. R. Doc. 120, at 19. Primm argues that the government could not have proven that he "owed substantial income tax" without establishing that UAD was a C corporation. *Id.*

"In reviewing the denial of a motion for a judgment of acquittal, we review the sufficiency of the evidence de novo, evaluating the evidence in the light most favorable to the verdict and drawing all reasonable inferences in its favor." *United States v. Wright*, 739 F.3d 1160, 1167 (8th Cir. 2014). Regardless of whether the government was required to prove that UAD was a C corporation or "a corporation not expressly exempt from tax," R. Doc. 120, at 13, we hold that the evidence was sufficient for a jury to convict on the indictment.

RA Comiskey's testimony defeats Primm's argument. RA Comiskey testified that he had observed an electronic record that stated that a Form 8832, the form filed by companies declaring their entity classification, had been received by the IRS from UAD. The presence of the electronic record of a filed Form 8832 enabled RA

Comiskey to testify that the IRS had received the form. UAD had filed a Form 1120, i.e., a U.S. Corporation Income Tax Return in 2012. The Form 1120 would not have been accepted if UAD was not a C corporation. This was sufficient evidence for the jury to determine that UAD was indeed a C corporation.

### III. *Conclusion*

Accordingly, we affirm.

_____